José Luján, Jr., demandante y apelante, v. La Comisión de la Policía Insular, demandada y apelada.

No. 4381.—*Visto:* Marzo 9, 1928.- *Resuelto:* Abril 25, 1928.

*B. T. Pacheco*, abogado del apelante; *J. A. López Acosta, Procurador General, Interino,* y *Felipe Janer, Sub-Procurador,* abogados de la apelada.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

José Luján, Jr., fué guardia de la Policía Insular en Puerto Rico, desde el 1 de marzo de 1919, hasta el 25 de julio de 1924, en cuya época fué retirado de su cargo, por incapacidad física; y entonces, de acuerdo con la ley No. 68 de 16 de julio de 1921, se le fijó una pensión de retiro, en cantidad de $35 mensuales, pagaderos por mensualidades vencidas. Desde enero de 1925, hasta 30 de noviembre de 1926, José Luján, Jr. estuvo empleado como archivero en el Municipio de San Juan de Puerto Rico, percibiendo sueldo, a razón de mil dollars por año. En 10 de octubre de 1925 la Jefatura de la Policía Insular escribió a José Luján Jr. una carta, que el destinatario recibió, en la que se le comunicaba que de acuerdo con la enmienda a la ley de retiro de la Policía Insular, y apareciendo Luján Jr. como empleado municipal, se esperaba su conformidad para que cesara en su pensión desde el 20 de agosto de 1925; o para que alegara lo que quisiera alegar. La carta aparece firmada por J. Lugo, Jefe Auxiliar y Ayudante P. I. Luján contestó a esa carta con otra en la que decía que se había retirado de la Policía, de acuerdo con la ley No. 68, de 16 de julio de 1921, y cuyo artículo 15 daba a los retirados el derecho de desempeñar cualquier cargo ejecutivo o administrativo, sin menoscabo de la pensión de retiro. La pensión, desde el 20 de agosto de 1925 hasta el 20 de noviembre de 1926, no

fué pagada a Luján Jr., quien presentó a la corte de distrito de San Juan una peticïón de *mandamus* contra la Comisión de la Policía Insular de Puerto Rico, compuesta de los señores N. A. Walcott, Manuel M. Ginorio y Julián W. Blanco. En la petición se alegaba, además de lo que se deja referido, que el peticionario había requerido a los demandados para el pago de la pensión; que para que la pensión se pagara era indispensable que los demandados, por su Presïdente, autorizaran y firmaran las nóminas correspondientes a las mensualidades vencidas, y las que han de vencer, y que los demandados han sido requeridos por el demandante para tal firma y autorización de nóminas, y se niegan a hacerlo, siendo ella una de sus obligaciones, y le causan grave perjuicio con esa negativa, y que carece de todo otro recurso rápido y adecuado para conseguir lo que solicïta.

Dictado por la corte auto de mandamus alternativo, compareció la Comisión de Policía Insular de Puerto Rico, negando las alegaciones·relativas a que tenía que firmar las nóminas, a haber sido requerida para hacerlo así, y a que hubiera causado perjuicio al peticionario; y presentando como defensas especiales las siguientes:

(*a*) que el demandante estuvo, desde 13 de enero de 1925 a 30 de noviembre de 1926, empleado como archivero, con un sueldo de mil dollars anuales, en el Municipio de San Juan,

(*b*) que el demandante, de acuerdo con la sección 5 incluida en la ley No. 68 de 1921, cesó en el goce de su pensión mientras desempeñaba el antes citado cargo de archivero,

. (*c*) que la demandada no ha retïrado al demandante su pensión, sino que ha dejado de autorizar el pago de la misma, mientras el demandante era empleado en el Municipio de San Juan,

(*d*) que el demandante abandonó el derecho a la reclamación de las mensualidades vencidas, dejando transcurrir quince meses sin reclamar.

La petición de mandamus aparece suscrita en 21 de diciembre de 1926.

La corte oyó el caso, con la prueba, y dictó sentencia contra el peticionario, declarando sin lugar el mandamus, sin especial condena de costas. La sentencia fué dictada en 1 de marzo de 1927. Y contra ella se interpuso la presente apelación.

Se han señalado por el apelante varios errores. No es de precisión tratarlos uno por uno.

La corte de distrito de San Juan, apreció la prueba y aplicó la ley recta y acertadamente. Veamos por qué.

En primer lugar, no ha resultado probado que la Comisión de la Policía Insular haga o redacte las nóminas, sino que las recibe hechas por el Cuartel General, y entonces las autoriza. No parece que la Comisión sea la que tenga el deber concreto de incluir en las nóminas cargos o conceptos algunos, si bien de la ley y de la naturaleza de esta Comisión, tiene ella atribuciones para negarse a aprobar nóminas y gastos en ellas incluidas. No se ha probado que la Comisión recibiera nómina alguna del Cuartel General, o de otra autoridad competente, en que se incluyera la pensión de Luján, y que se negara a firmarlas. El acto o mejor, la omisión alegada, no ha sido probada. Esto sería suficiente para justificar la actitud de la corte, y su sentencia; y para confirmarla.

En el caso hay algo más. La primitiva ley de retiro de policías, o sea la No. 68 de 1921, en su sección 15 decía:

"Los retirados del servicio de la policía insular quedarán en el goce de todos sus derechos civiles, y podrán desempeñar cualquier cargo electivo o administrativo, sin menoscabo de la pensión de retiro que disfrutan."

Pero en agosto 20 de 1925, la Legislatura de Puerto Rico por ley No. 86 enmendó la ley 68 de 1921 y agregó la sección 5 a que dice:

"Toda persona pensionada cesará en el goce de su pensión mientras ocupe cualquier cargo del gobierno federal, insular o municipal con sueldo o retribución de cualquier clase."

· Este fué el motivo de que se suspendiera la pensión del apelante, quien ahora alega que se ha dado efecto retroactivo a esa ley, y que no se le podía privar de un derecho adquirido, el de su pensión, en la facultad de cobrarlo aunque tuviera otro empleo oficial.

Los casos citados por la corte de distrito de San Juan, en su opinión en este litigio, se reproducen aquí con aprobación. Y como doctrina aplicable a la materia se cita ahora el caso *Pennie v. Reis*, 132 U. S. Reports 471, *October term*, 1889, en el que la cuestión decidida tiene analogía con el presente caso.

En *Pennie v. Reis*, se trataba de una ley de California, de 1 de abril de 1878, en la que, entre otras disposiciones, se facultó a la ciudad y condado de San Francisco para que su tesorero retuviera de la paga de cada policía la suma de dos dollars mensuales para el fondo de seguros de vida y salud de los policías; y que a la muerte de cualquier miembro de la fuerza de policía, el tesorero pagara a sus herederos legales la suma de mil dollars; y en los casos de enfermedad se pagara una cantidad al individuo de la policía que tuviera que renunciar su cargo por tal motivo. El policía Ward había servido en el cuerpo desde septiembre de 1869 hasta marzo de 1889, en cuya fecha falleció. El administrador de su herencia reclamó los mil dollars que creía le correspondían; y el tesorero se negó a pagarlos. El administrador solicitó un mandamus; y en su contestación el tesorero alegó que la ley de 21 de marzo de 1889, de California, para crear un fondo de socorro y de seguro para la policía de los condados y ciudades de aquel Estado, se hallaba en conflicto con la ya citada, invocada por el administrador y esta última estaba derogada por la de 1889, con

arreglo a la que el tesorero rehusaba el pago de la suma solicitada. El auto de mandamus fué denegado.

En su decisión en este caso la Corte Suprema de los Estados Unidos, después de expresar la contención del apelante, y su argumento acerca de que al policía Ward se le habían descontado dos dollars mensuales para ese fondo de seguro, dice lo que sigue:

"Siendo un fondo levantado en esa forma, estaba enteramente a disposición del gobierno, hasta que, por la ocurrencia de uno de los acontecimiento mencionados—la renuncia, destitución o muerte del funcionario—el derecho a la suma específica prometida se convirtiera en un derecho adquirido a favor del funcionario o de su representante. No es necesario aducir argumento o citá de autoridades para demostrar, que al disponer de un fondo de tal naturaleza, con anterioridad a la fecha en que ocurra uno de los acontecimientos mencionados, el estado no menoscababa ningún derecho absoluto de propiedad del funcionario de policía. La orden del estado de que los fondos estén a beneficio del funcionario de policía o su representante, bajo ciertas condiciones, estaba sujeta a ser alterada o revocada en cualquier momento, a voluntad de la legislatura. No había contrato alguno por parte del estado de que la disposición de tal fondo permanecería siempre según fué provisto originalmente. Hasta que ocurra el suceso determinado para que el dinero o parte de éste sea pagado, no existe derecho adquirido alguno en favor del funcionario a recibir tal pago." 132 U. S. Rep. 471.

En la decisión del caso *Rodríguez* v. *Miller*, 23 D.P.R. 594, este tribunal ha hecho la declaración que sigue:

"Otra de las alegaciones del apelante acerca de este aspecto del caso, es que la ley de 1915, es de carácter retroactivo y por tanto nula. Se alega que un alumno que ha recibido libros en el primer año de alta escuela ha adquirido el derecho a los libros de texto y enseres durante todo el curso de la alta escuela, y por tanto, que el estatuto perjudica un derecho adquirido al amparo de una legislación anterior. El artículo 3 del Código Civil que ha sido citado por el apelante dispone, en cuanto al particular, que 'las leyes no tendrán efecto retroactivo si no dispusieren expresamente lo contrario,' y que 'en ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior.' La Ley

Orgánica y no el Código Civil es nuestra constitución, y la Asamblea Legislativa se encontraba tan libre y desembarazada en el ejercicio de sus facultades legislativas en su sesión de 1915, como lo estaba en el año 1902, al adoptar el Código Civil Revisado. Ni fué la intención de ese cuerpo al celebrar su segunda sesión en 1902 y aprobar el artículo 3, u otro cualquiera del Código Civil, atar de manos a todas las demás asambleas sucesivas, ni hubiera podido realizar ese fin si así lo hubiera deseado. La única consideración racional del artículo 3 del Código Civil es que dicho artículo simplemente proclama en forma estatutoria un principio corriente y cardinal bien reconocido de interpretación de estatutos.''

No hay en el caso que nos ocupa, un derecho adquirido que se viole con la enmienda que, por adición, hizo la Legislatura a la ley No. 68 de 1921.

*Por las razones expresadas debe confirmarse la sentencia apelada.*