(No. 23661.— )

CHESTER C. DODGE *et al.* Appellants, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 27, 1936—Rehearing denied Dec. 4, 1936.*

ALLAN J. CARTER, (ALFRED R. BATES, and C. T. B. GOODSPEED, of counsel,) for appellants.

BARNET HODES, Corporation Counsel, and RICHARD S. FOLSOM, (JOSEPH F. GROSSMAN, FRANK S. RIGHEIMER, RALPH W. CONDEE, H. MEYER SIMBORG, and FRANK R. SCHNEBERGER, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants' bill filed in the superior court of Cook county seeking to enjoin appellees, the Board of Education of the City of Chicago and others, from reducing teachers' pensions as applied to them, was dismissed for want of equity. They bring the cause here on the ground that a constitutional question is involved in the construction given the act by the chancellor.

The original complaint was filed by twenty plaintiffs as a class suit on behalf of themselves and all others similarly situated. The Board of Education of the City of Chicago and certain of its officers, and the city of Chicago and certain of its officers, were made defendants. The act which is made the basis of this complaint is commonly known and is hereinafter referred to as the Miller act. It is an act having to do with teachers' pensions. (Smith-Hurd Stat. 1927, chap. 122, par. 614a, p. 2586.) The complaint of appellants is, that by the revision of that act in 1935 vested rights of those teachers who had retired, or sought to do so, prior to the enactment of such revision

were taken away. These appellants all have either retired or sought to retire before the 1935 amendment of the Miller act. The only provision of that amendment here attacked has to do with the reduction of pensions provided by the act.

This act was originally passed in 1926 and entitled, "An act to provide for the compulsory retirement of teachers, etc., and the payment of retirement annuities." The act provides a pension in addition to that provided by the Teachers' Pension act of 1909. As originally enacted the Teachers' Pension act provided for voluntary retirement of teachers. The Miller act provided for compulsory retirement of teachers at the age of seventy and for the payment of retirement annuities of $1500 per annum. This was a separate act and in nowise affected the Teachers' Pension law, which provided a pension of $1000 per year on voluntary retirement. The additional annuities under the Miller act are paid solely out of funds raised by taxation. Teachers contribute nothing toward that fund. In 1927 the Miller act was amended to fix, by section 3, the annuities on a sliding scale from $1000 to $1500 to teachers voluntarily retiring between the ages of sixty-five and seventy. This, to teachers retiring under seventy, was a reduction from the flat amount of $1500 given by the original act. By the amendment effective on July 12, 1935, the title of the act was amended to read as follows: "An act to amend sections 1 and 2 and the title of 'An act to provide for the compulsory and voluntary retirement of teachers, principals, district superintendents, and assistant superintendents, and for the voluntary retirement of superintendents of schools and members of the board of examiners, and for the payment of retirement annuities,' approved May 19, 1926, as subsequently amended, and to repeal section 3 of said act." (Laws of 1935, p. 1378.) This amended act abolished the provisions for voluntary retirement and fixed the compulsory retirement age at sixty-five years. The an-

nuities were reduced to a flat rate of $500 annually. A very large number of former teachers have joined in this proceeding, as did some who sought to retire in May and June, 1935, under the Miller act before the enactment of the 1935 amendment.

Appellants' complaint is bottomed on the proposition that the rights of teachers retiring or entitled to retire prior to the 1935 amendment were fixed and determined by the law in effect at the time of their retirement or written request for retirement and could not be abolished or reduced by subsequent act of the legislature, and that if the 1935 amendment is to be construed as the superior court construed it, it is in violation of section 2 of article 14 of the constitution of Illinois and the fifth amendment of the Federal constitution and in violation of section 10 of article 1 of that constitution, as an attempt to take away vested rights, to take property without due process of law, and to impair obligations of contracts. The prayer of the bill is, that the board and its appropriate officers be required to take the necessary action to permit requests for voluntary retirement under the law in force at the time the requests were made for such, and that it take such action as necessary to restore the annuities then in force. The city of Chicago filed a motion to dismiss the complaint on the ground of want of equity. The board of education answered denying complainants' right to the relief sought. Many teachers and former teachers intervened.

As is stated by counsel for appellants in their reply brief, "appellants' case rests upon the proposition that they have vested property rights to the payment of future installments of the annuities on the basis fixed by the law in force at the time they retired, or being entitled to retire, or made application for retirement." This question will be first considered. They cite *DeWolf* v. *Bowley,* 355 Ill. 530, *Porter* v. *Loehr,* 332 id. 353, *Beutel* v. *Foreman,* 288 id. 106, *People* v. *Abbott,* 274 id. 380, *Hughes* v. *Traeger,* 264

id. 612, and *Pennie* v. *Reis*, 132 U. S. 464, 33 L. ed. 426, in support of this claim.

The case of *DeWolf* v. *Bowley, supra,* did not involve the question of vested property rights but announced the oft-repeated doctrine under which pensions to retired officers are sustained—*i. e.,* that a public benefit accrues in two ways: by encouraging such officers or employees to remain in the service, and by retiring from public service those who have become incapacitated from performing the duties as well as they might be performed by younger or more vigorous persons. The opinion in that case reviews decisions of this and other courts.

*Porter* v. *Loehr, supra,* concerned an amendment to the Police Pension act which increased the pension of retired police officers and applied such increased pensions to those who had retired under the previous act. The act was held unconstitutional for the reason that the increase of pensions to retired policemen did not contemplate the rendition of any additional service by the pensioners and the amount of their pensions was fixed by law when they retired and had their sole basis in services rendered prior to retirement. This was the ground upon which the invalidity of the act was held, and not, as counsel for appellants argue, because of retroactive application of such amendment.

*Beutel* v. *Foreman, supra,* was a *mandamus* proceeding to compel the board administering the Police Pension Fund act to grant a pension. Beutel retired after twenty years of service as a member of the police force and filed an application for pension. About three months after filing this application the act was amended, adding the requirement that the retired officer shall also have reached the age of fifty years. Beutel had not reached that age and the board denied his petition. The act prior to the amendment of July, 1917, had no fifty-year requirement. It was argued that Beutel had a vested right in a pension when on March 31, 1917, he retired and made application for such pension,

and that the legislature could not take away that right by subsequent legislation imposing another requirement. It was argued that the amendment was unconstitutional as violating the property right vested in him. It was there held that Beutel enjoyed no right which could not be altered by the legislature.

A right, to be within the protection of the constitution, must be a vested right. It must be something more than a mere expectancy based upon an anticipated continuance of an existing law. If before rights become vested in particular individuals the convenience of the State induces amendment or repeal, such individuals have no cause to complain. (*People* v. *Clark*, 283 Ill. 221; I Lewis on Stat. Const. (2d ed.) sec. 284.) It was held in the *Beutel case* that municipalities may take away the right to pensions under circumstances shown in that record without affecting the contract right of pensioners or violating the constitution.

Counsel for appellants say that the doctrine of the *Beutel case* is to be applied only to facts on that record, which showed that no right in the retiring officer had become vested, while here the rights of these retired teachers had become vested before the amendment of 1935. We are unable to see the lack of analogy on the facts. In that case Beutel had complied with the statute as it existed at the time he retired but it was changed before the board acted on his application for pension. The opinion in that case discusses the authorities fully and need not be re-examined here. We adhere to the holding there made. None of the cases cited by counsel for appellants have modified the principles laid down in the *Beutel case*. The decisions of this court have uniformly been that pensions are not based on contract but are mere expectancies based upon anticipated continuance of existing law, and that future installments of pensions are not vested property rights. It follows that the State may reduce future installments of pensions without violating the provisions of the State or Federal constitution.

Counsel for appellants argue that if an amendment may not be made retroactive to include increased pensions to those who had retired before such increase was authorized, then by the same token the legislature should not be permitted to reduce pensions by the retroactive application of such amendatory statute, and they call attention to what they deem an analogy in logic between this case and *Porter* v. *Loehr, supra.* It will be observed, however, that the basis of the holding in the *Porter case* was not that the amendatory act could not be made retroactive, but the reason for the invalidity of that act as applied to Porter was that an increase of pension to those retiring before such increase was authorized was not in contemplation of services to be rendered nor an inducement to continued service but was a gratuity, and so came within constitutional inhibition.

Appellants' counsel also say that *Miner* v. *Stafford,* 326 Ill. 204, supports their contention that this act should not be construed to be retroactive in its application. In that case petitioner's husband was killed some six months before an amendment to the Pension act increasing pensions to widows of policemen who were killed in service was enacted. It was held that her right to a pension was one given by the act as it existed at the time the right to receive a pension accrued and not by the amendment. While the opinion refers to the fact that nothing is said in the amendatory act showing an intention to give it retroactive application, yet the basis of the opinion was that her right to a pension arose before the amendment was enacted. As is pointed out in *Porter* v. *Loehr, supra,* to give a pension act of that character retroactive effect would be to violate the constitutional prohibition against donation of public funds for private interests. In this case the 1935 amendment of the Miller act by specific reference repealed section 3, which fixed the amount of the retirement annuities, leaving nothing in the act other than the provision for $500 per annum to authorize the payment of those annuities. It would be diffi-

cult to conceive of stronger evidence of legislative intent to make the amendment retroactive in its application.

In *Hughes* v. *Traeger, supra,* it was held that a change in the disposition of a fund, a portion of which was contributed from public taxation and a portion from the salaries of employees, does not violate any vested right of those interested therein, since such right, until it accrues, is only in the nature of an expectancy created by law and which the law may revoke or destroy. Counsel argue that this case is authority for their claim of vested right because of the language of the opinion, "until the happening of the event designated by the statute for its distribution he has no vested right in the fund but only an expectancy created by the law," and that in this case the happening of the event designated by the statute was the retirement of teachers under the provisions of the Miller act. The doctrine, as we have seen, is thoroughly established in this State that the State may control the giving or taking away of pensions, and, in consideration of such expressions as "happening of contingency," this doctrine must be borne in mind. If there became due to any of these appellants any installment under the act prior to the amendment of 1935 which was not paid they would have a cause of action to recover it, for until a statute is amended the processes of the law are afforded those who are beneficiaries under it. It is not intimated in this case that there are any such unpaid installments.

*Pennie* v. *Reis, supra,* relied upon by appellants, arose in California. In 1878 a statute was adopted in that State providing that upon death of a police officer after June 1, 1878, there should be paid to his legal representatives, out of a pension fund established by the act, the sum of $1000. The act required contributions to the fund, and provided that in case a policeman resigned he should be re-paid the amounts he had contributed. On March 4, 1889, a new pension law was enacted, providing for the merger of cer-

tain pension funds and repealing the statute under the terms of which $1000 was to be paid to a deceased policeman's estate. This amendment occurred just nine days before the death of the policeman whose representatives were seeking the award. It was contended there, as here, that the act of 1889 violated constitutional provisions against the impairment of the obligation of contract and destroyed vested rights. It was held that this was not so. The court there said, that "until the particular event should happen upon which the money or part of it was to be paid there was no vested right in the officer to such payment. His interest in the fund was until then a mere expectancy created by law and liable to be revoked or destroyed by the same authority."

The difference in nature between a lump sum pension or award and a continued pension is obvious and is sufficient to mark the difference in the rule with reference to interest therein as found in the decisions of the courts. Under a statute such as the one in *Pennie* v. *Reis, supra,* where, on the happening of a certain event, a certain sum of money became due, the interest of the beneficiary when such event takes place is analogous to the interest of a pensioner whose installment or pension has become due under the terms of a pension act. *Pennie* v. *Reis, supra,* does not in any way militate against the rule generally adopted, that pension acts do not create in their beneficiaries a vested interest in future installments of the pensions created thereby.

Counsel for appellants seeks to draw a distinction between the payment of a pension and the payment of an annuity as affecting the question of a vested right therein. The Miller act uses the term "annuity." Counsel say that even though this court has held that pensioners have no vested right in future installments of pensions, yet there is a sufficient difference between a pension and an annuity to justify their position that appellants have a vested right in such annuity. They say that annuities are in the nature of

compensation for services theretofore rendered for which compensation has been withheld. We are unable to see the distinction. The plan of payment is the same, the purposes are evidently the same, and the use of the term "annuity" instead of "pension"—which is but an annuity—does not seem to us to result in the distinction for which counsel for appellants contend. Moreover, it may be observed that counsel's contention that these payments are annuities of compensation withheld for services rendered, if of force, would endanger the entire act, since section 19 of article 4 of the constitution prohibits the granting or authorizing of extra compensation, fee or allowance to any public officer or contractor after service has been rendered or contract made.

Counsel for appellants also argue that under section 4 of the statute on Statutes (Smith-Hurd Stat. 1935, chap. 131, par. 4, p. 3140,) the amendment to the Miller act should be construed as retaining provisions for those teachers who retired before the amendment. Section 4 provides that "no new law shall be construed to repeal a former law, as to * * * any right accrued or claim arising under the former law * * * before the new law takes effect." This statute can be of no avail unless the right of appellants to this pension is a vested right. In addition, it may be observed that the Miller act of 1935 is a complete act within itself, revising the old Miller act. There is therefore no room for the application of section 4 of the statute on Statutes.

We are of the opinion that the superior court did not err in dismissing appellants' bill. The decree is therefore affirmed.

*Decree affirmed.*