TOMÁS TORRES TORRES, Plaintiff and Appellee, v. BLANTON WINSHIP, GOVERNOR OF PUERTO RICO ET AL., Defendants and Appellants.

No. 7949. Argued April 4, 1940.—Decided May 8, 1940.

*George A. Malcolm, Attorney General,* and *Emilio de Aldrey, Assistant Attorney General,* for appellant. *C. Coll y Cuchí* and *Víctor a Coll* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

Plaintiff and 57 other members of the Insular Police Force retired from the service while the law approved on July 16, 1921, entitled: "An Act to Provide for the Retirement of the Members of the Insular Police Force etc." (Act No. 68, Sess. Laws of 1921), as amended, was in force. Under the provisions of the above Act the plaintiff was entitled to the payment of a pension monthly amounting to $68.71.

Pursuant to Act No. 70 of May 3, 1931, plaintiff's pension was reduced to $20 monthly, which prevented the plaintiff from receiving $48.71 monthly, making a total of $584.52 for the fiscal year 1934-35.

It is alleged by the plaintiff that under section 7 of Act No. 70 of 1931, *supra,* he and his fellow members are entitled to the payment of the sums which they failed to receive "from any surplus in any appropriation of the Insular Government at the close of each fiscal year;" that at the close of the fiscal year 1934-35 there was a surplus more than sufficient to cover the payment of the sums claimed by the plaintiffs; that the latter had a vested right to be paid granted by a previous law; that the defendants have refused to pay to the plaintiffs the sums claimed by each of them respectively; and he prays in his complaint that the defendants be adjudged to pay the sums claimed by each of the plaintiffs.

The defendants alleged that the complaint failed to state facts sufficient to constitute a cause of action. Said demur-

rer having been overruled, the defendants answered and pleaded as follows:

(*a*) That the Governor is without authority to pay the sums claimed, because the authority conferred on him by section 7 of Act No. 70 of 1931 was revoked or suppressed by Act No. 18 approved July 15, 1935, which amended the former Act.

(*b*) That there were no surpluses for the year 1934–35, but, even if there were any, they could not be applied to the payment of pensions, as the authority of the Governor to do so had been revoked.

(*c*) They deny that the amount of $584.52 for pensions had accrued in favor of the plaintiff at the time of the approval of Act No. 18 of 1935 and, on the contrary, allege that the plaintiff is not entitled to claim such sum because after the approval of Act No. 70 of 1931 his pension had been fixed at $20 monthly.

All the evidence submitted by the plaintiff at the trial was the testimony of Ramón Segarra, Chief of the Division of Disbursements and Accounts of the Treasury Department, who testified that after the liquidation of the budget for 1934–35 there was left a surplus amounting to $122,137.82; that "such surplus is not a cash surplus but simply a surplus from appropriations, sums not disbursed;" that such surplus was transferred to the emergency fund; that at present there is no such $122,137.82 surplus but an emergency fund.

Judgment was rendered for the plaintiff, from which the defendants have appealed and allege that the lower court erred in overruling the demurrer interposed by them and in sustaining the complaint.

Act No. 68 of 1921, (Sess. Laws of 1921, p. 652), which provided for the retirement of members of the Insular Police Force, says:

Section 16.—The Pension Retirement Fund shall be constituted in the manner following: By two (2) per cent of the total pay of

all members of the Insular Police in active service and retired; by the total amount of fines imposed upon members of the force for violation or rules; by the proceeds of sales of weapons or other articles confiscated by the police and forfeited pursuant to law, and the proceeds of the sale of furniture, equipment and other property used by the police force that may be sold to be substituted by others, and by the sum of thirteen thousand (13,000) dollars hereinafter designated.

"Any member of the Insular Police Force who as such shall receive a salary from The People of Porto Rico for rendering his services as such member of the Insular Police Force after the taking effect of this Act, shall contribute to the Pension Fund, herein established, with two (2) per cent of the amount of the aforesaid salary.

"Upon the fixing of salaries which from time to time are fixed for members of the Insular Police Force of Porto Rico, notice shall be taken of the provisions of this Act and of *the obligation* of the members of the Insular Police Force *to contribute* to the support of the aforesaid fund, which *shall form a part of the contract to which such members are subject at the time of enlistment in the force.*

"That for the purpose of the preceding provision, the Treasurer of Porto Rico is hereby directed to retain from the salary appertaining to each member of the Insular Police Force of Porto Rico and from such pension as may be paid to any person pursuant to this Act, two (2) per cent of the aforesaid salary or pension, which shall remain in the Treasury as part of the Retirement Fund hereby established for the purpose of carrying out the provisions hereof." (Italics ours.)

Section 16, *supra,* was amended by Act No. 86 of 1925, (Sess. Laws of 1925), p. 662, which increased to three per cent of their salaries the sum to be contributed by members of the Insular Police Force to the Pension Fund. There was also imposed on those to be admitted to the force an entry fee of $5, to be applied to the same fund, which entry fee shall be discounted from their salaries at the rate of one dollar monthly. Such was the law in force at the time of the retirement of the plaintiffs from the service.

Section 7 of Act No. 70, Session Laws of 1931, approved on May 3, 1931, provides as follows:

"Section 7.—In the case of the older members of the police force, who, before this Act takes effect, were retired on pensions in accordance with the provisions of the Act of July 16, 1921, or of said act as amended, the annuities shall be paid pursuant to the provisions of clause (1) of section 5 hereof; *Provided,* That the Governor of Porto Rico is hereby authorized to pay, and he shall pay. to the said members retired with a pension prior to the approval of this Act, from any surplus in any appropriation of the Insular Government at the close of each fiscal year, the difference between the amount granted them by this Act and that to which they are entitled under the provisions of laws in force on the date of their retirement, for which purpose the annuities corresponding to said members shall be computed and shall be adjusted in accordance with said laws in force on the date of their retirement; *Provided, further,* That if in any fiscal year there shall not be any surplus with which to meet the payment of that difference, the Government of Porto Rico shall not have incurred any obligation for payment as regards the difference there may be in said year, and in case that in any year the surpluses in appropriations are not sufficient to pay the total of the difference that there may be, the total of said surpluses shall be pro-rated in equal parts between all the pensioned members in proportion to the amount to which they are respectively entitled.

"In the case of any heir of one of the older members of the force who is entitled to a temporary annuity, prior to the date of approval of this Act, the annuity shall be fixed at two hundred and forty (240) dollars a year, and continued for a term not exceeding ten (10) years from the date of the death of such older member of the force."

Section 7 just transcribed was amended by Act No. 18 of July 15, 1935, drafted as follows:

"Section 7.—In the case of the old members of the police force who, before this Act takes effect, were retired on pensions in accordance with the provisions of the Act of July 16, 1921, or of said act as amended, the annuities shall be paid pursuant to the provisions of clause (1) of Section 5 hereof."

The contention of the plaintiff pensioners is that when the fiscal year 1934–35 closed with a surplus in the appropriations of the Insular Government sufficient for the purpose of paying to said pensioners the difference between the amount to which they were entitled under Act No. 70 of

May 3, 1931 (subdivision 1, sec. 5) and that to which they had a right pursuant to the law in force at the time of their retirement (Act No. 68, 1921, and Act No. 86, 1925), they became entitled to the payment of said difference out of any surplus, in compliance with the provisions of section 7 of Act No. 70 of 1931, *supra;* and that such right so vested can not be affected or undermined by subsequent legislation.

The contention of the defendants is that at the time of the filing of the complaint, October 27, 1937, the Governor no longer had any authority to make such payments, because of the repeal of the authority conferred on him by section 7 of Act No. 70 of 1931, *supra.*

There is no doubt that as there was involved a system of pension of a compulsory character, such as the one established for the retirement of members of Insular Police Force by Act No. 68 of 1921, as amended by Act No. 86 of 1925, the Legislative Assembly had power to reduce at any time the amount of future pensions, as was done by it by means of subdivision (1) of Act No. 70 of 1931. See: *MacLeod* v. *Fernández,* 101 F. (2d) 20; 21 R.C.L. 242; *City of Dallas* v. *Trammell,* 129 Tex. 150, 101 S.W. (2d) 1009; *Dodge* v. *Board of Education,* 364 Ill. 547, 5 N.E. (2d) 84; *Dodge* v. *Board of Education,* 302 U.S. 74, 82 L. Ed. 57; *Luján* v. *Insular Police Commission,* 38 P.R.R. 52; and *García et al* v. *Gallardo, ante,* p. ____.

The issue for our determination here is:

Had the plaintiffs at the time of going into effect of Act No. 18 of July 15, 1935, a vested right to be paid the balance of their pensions out of the surplus in the appropriations for the year 1934–35, which right could not be affected by subsequent legislation? The question must be answered affirmatively.

In 1931 when the Legislature was compelled by the difficult financial situation of the Insular treasury to reduce the pensions granted to the insular policemen, plaintiffs herein, it did so in the manner provided for in subdivision (1) of

section 5 of Act No. 70 of 1931. However, with a view to provide a system whereby policemen retired on a pension could collect in full the pension allowed by the law in force at the time of their retirement, as soon, as the financial situation of the Insular treasury allowed, the Legislature provided by means of section 7 of the above Act that if any fiscal year closed with a surplus in any appropriation of the Insular Government, such surplus might be availed of by the Governor for the payment to retired policemen of the sums required for completing, during said fiscal year, the pensions fixed by the Act of July 16, 1921. The legal purpose of such provision was to reassign and have available for the payment of the balance due on the pensions the surplus from any appropriation in the budget of the Insular Government.

At the closing of the fiscal year 1934–35 on June 30, 1935, Act No. 70 of May 3, 1931, being in force and there being a surplus amounting to $122,137.82 from appropriations in the budget of the Insular Government, the right of the plaintiffs to full payment of their pensions out of said surplus became vested. From that moment it devolved upon the Governor to effect the payment.

Act No. 18, *supra,* was approved and went into effect on July 15, 1935, when the pensions now claimed by the plaintiffs had already accrued under a former act and the plaintiffs had already become entitled to have their pensions paid out of the surplus from the appropriations for the fiscal year 1934–35. The aforementioned Act No. 18 of 1935 contains no clause or provision showing the legislative intent that the act be applied retroactively. Such clause, however, if existent, would be void and unconstitutional, because in no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action. Section 3 of our Civil Code.

The authorities already cited by us sustaining the constitutional validity of statutes reducing the amount of pensions fixed by laws in force at the time of the retirement

of the pensioner, refer to future pensions which have not yet accrued, but not to pensions which have already accrued and are therefore demandable.

The general rule, stated in 21 R.C.L. 242, is as follows:

"VESTED RIGHT OF PENSIONER TO PENSION.—The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right; and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. *It is, however, conceded that where any particular payment under a pension has become due, the pensioner has a vested right to it.*" (Italics ours.)

In *People* v. *Retirement Board,* 326 Ill. 579, 158 N.E. 220, it was held:

". . . . As against the state or its political subdivisions, there is no vested right *in a pension accruing in the future* from month to month." (Italics ours.)

In *Dodge* v. *Board of Education, supra,* it was held that "future installments of pensions are not vested property rights" and that "the State can reduce *future installments* of pensions without violating the provisions of state or the federal constitution." In the same case it was said:

". . . .Under a statute such as the one in *Pennie* v. *Reis, supra,* where, on the happening of a certain event, a certain sum of money became due, the interest of the beneficiary when such event takes place is analogous to the interest of a pensioner whose installment or pension has become due under the terms of a pension act."

And, lastly, the Boston Circuit Court in *MacLeod* v. *Fernández, supra,* held that it was error for this court to hold that upon retiring from the service in 1931 pensioner Fernández had a vested right in pensions "to which he would become entitled only when the same accrued in the future."

The condition established by the statute having been fulfilled —the termination of the fiscal year 1934-35 with a surplus in the appropriations—to entitle the plaintiffs to the payment of the balance of their pensions, the conclu-

sion is inevitable that the plaintiffs acquired a vested right that can not be affected by subsequent legislation. This subsequent legislation revoked the authority of the Governor to pay any pension that might accrue in the future, but neither expressly nor impliedly could it revoke the power to pay sums already accrued under a former legislation. See *Escartín* v. *Insular Police Commission*, 52 P.R.R. 701, in which we held that pensions accrued and unpaid constitute a vested right.

For the foregoing reasons, the judgment appealed from is affirmed.

Mr. Justice De Jesús took no part in the decision of this case.