Tomás Torres Torres, demandante y apelado, *v.* Blanton Winship, Gobernador de Puerto Rico; Leslie A. MacLeod, Auditor de Puerto Rico y Rafael Sancho Bonet, Tesorero de Puerto Rico, demandados y apelantes.

Núm. 7949.—*Sometido:* Abril 4, 1940. *Resuelto:* Mayo 8, 1940.

694

*Hon. Procurador General George A. Malcolm (B. Fernández García, Ex-Procurador General, en el alegato) y Emilio de Aldrey, Procurador General Auxiliar, abogados de los apelantes; C. Coll Cuchí y Víctor A. Coll, abogados del apelado.*

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante y 57 otros miembros de la Policía Insular se retiraron del servicio cuando regía la ley aprobada en julio 16 de 1921, titulada "Ley para establecer el retiro de los miembros de la Policía Insular, etc.," (Ley núm. 68 de 1921, pág. 653) según fué enmendada. De acuerdo con las disposiciones de dicha ley, el demandante tenía derecho a recibir una pensión de $68.71 mensuales.

Por virtud de la Ley núm. 70 de mayo 3, 1931 (pág. 435), la pensión del demandante quedó reducida a $20 mensuales, con lo cual el demandante dejó de recibir $48.71 mensuales, o sea un total de $584.52 por el año económico 1934–35.

Alega el demandante que de acuerdo con la sección séptima de la citada Ley núm. 70 de 1931, él y sus compañeros tienen derecho a que se les paguen las sumas que dejaron de recibir "con cualquier sobrante de cualquier asignación del Gobierno Insular a la terminación de cada año económico"; que a la terminación del año económico 1934–35 hubo un sobrante que era más que suficiente para atender al pago de las sumas reclamadas por los demandantes; que éstos habían adquirido el derecho a ser pagados de acuerdo con la ley anterior; que los demandados se han negado a pagar a los demandantes las sumas que cada uno de ellos reclama; y pide en la súplica de la demanda que se condene a los demandados a pagar las sumas reclamadas por cada uno de los demandantes.

Alegaron los demandados que la demanda no aduce hechos suficientes constitutivos de causa de acción. Declarada sin lugar dicha excepción, contestaron los demandados, y alegaron como defensas:

(*a*) Que el Gobernador no está autorizado para pagar las sumas reclamadas, porque la autoridad que le confería la sección 7 de la Ley núm. 70 de 1931 le fué abrogada o suprimida al ser enmendada dicha ley por la núm. 18 de 15 de julio de 1935 ((2) pág. 111).

(*b*) Que no existen sobrantes para el año 1934–35, pero que si los hubiera no podrían ser destinados al pago de pensiones, por haber sido abrogada la autoridad que para ello tenía el Gobernador.

(*c*) Niegan que el demandante hubiera devengado en concepto de pensiones la suma de $584.52 para la fecha en que se aprobó la Ley núm. 18 de 1935, y alegan en contrario que el demandante no tiene derecho a recibir dicha cantidad por cuanto desde la aprobación de la Ley núm. 70 de 1931 su pensión fué fijada en la suma de $20 mensuales.

La única evidencia ofrecida por el demandante en el acto de la vista fué el testimonio de Ramón Sárraga, Jefe del Negociado de Pagaduría y Cuentas del Departamento de

Hacienda, quien declaró que de la liquidación del presupuesto de 1934–35 resultó un sobrante de $122,137.82; que "eso no representa dinero en efectivo, sobrante, sino únicamente sobrante en asignaciones, cantidades no gastadas"; que la cantidad así sobrante fué transferida al fondo de emergencia; que lo que existe hoy no es un sobrante de $122,137.82 y sí un fondo de emergencia.

Fallado el pleito a favor de los demandantes, apelaron los demandados, señalando como error de la corte inferior el haber declarado sin lugar la excepción previa por ellos interpuesta y con lugar la demanda.

■ La Ley núm. 68 de 1921 (Leyes de 1921, pág. 653) que estableció el retiro de los miembros de la Policía Insular, disponía:

"Sección 16.—El Fondo de Pensiones de retiro estará constituído con las consignaciones siguientes: con el dos por ciento del haber total de todos los miembros de la Policía Insular en servicio activo y retirados, el total del importe de las multas impuestas a los miembros de la Fuerza por infracciones reglamentarias, . . . . y la cantidad de trece mil dólares que más adelante se designa en la presente.

"Todo miembro del Cuerpo de la Policía Insular que en calidad de tal reciba un sueldo de 'El Pueblo de Puerto Rico' por prestar sus servicios como tal miembro del Cuerpo de la Policía Insular después de estar en vigor la presente Ley, contribuirá al Fondo de Pensiones que por ésta se establece, con el dos por ciento del importe del sueldo mencionado.

"Al ser fijados los sueldos que de tiempo en tiempo se señalan a los miembros del Cuerpo de la Policía Insular de Puerto Rico, se tendrán en cuenta las disposiciones de la presente Ley *y la obligación de contribuir* los mencionados miembros del Cuerpo de la Policía Insular al sostenimiento del fondo supradicho *formará parte de los contratos a que éstos se sujeten al ser enlistados en el Cuerpo.*

"A los efectos de la anterior disposición, por la presente se ordena al Tesorero de Puerto Rico retenga del sueldo correspondiente a cada miembro . . . . . y de la pensión que se pague a cualquier persona de acuerdo con la presente Ley, el dos por ciento del referido sueldo o pensión que quedará en Tesorería como parte del Fondo de Retiro que por la presente se establece . . ." (Bastardillas nuestras.)

La sección 16, supra, fué enmendada por la Ley núm. 86 de 1925, Leyes de ese año, página 663, en el sentido de aumentar a tres por ciento del importe de sus haberes la contribución que debían hacer los miembros de la Policía Insular al Fondo de Pensiones. También se imponía a los que fueran admitidos al cuerpo una cuota de entrada de $5, con destino al mismo fondo, cuota que les será descontada de sus sueldos a razón de un dólar mensual. Tal era la ley que regía en la fecha en que los demandantes se retiraron del servicio.

La Ley núm. 70 de mayo 3 de 1931 redujo las pensiones de que venían disfrutando los demandantes al amparo de la ley anterior, y por su sección 7 dispuso:

"Sección 7.—En el caso de antiguos miembros de la Fuerza de la Policía que, antes de entrar en vigor esta Ley, hubieren sido retirados con pensión de acuerdo con las disposiciones de la Ley de julio 16, 1921, o de dicha ley según ha sido enmendada, la anualidad será pagada de acuerdo con las disposiciones del inciso (1) de la sección 5 de esta Ley; *Disponiéndose,* que el Gobernador de Puerto Rico queda autorizado para pagar y pagará a los referidos miembros retirados con pensión con anterioridad a la aprobación de esta Ley, con cualquier sobrante de cualquier asignación del Gobierno Insular a la terminación de cada año económico, la diferencia entre la cantidad que por esta Ley se les concede y la a que tienen derecho de acuerdo con las disposiciones de las leyes vigentes para la fecha de sus retiros, a cuyo objeto las anualidades correspondientes a dichos miembros se computarán y ajustarán a tenor de dichas leyes vigentes a la fecha del retiro; *Disponiéndose, además,* que si en cualquier año económico no hubiere sobrante alguno con el cual atender al pago de esa diferencia, el Gobierno de Puerto Rico no habrá incurrido en obligación alguna de pago respecto a la diferencia que hubiere en dicho año, y en caso de que en cualquier año los sobrantes de asignaciones no fuesen suficientes para satisfacer el total de la diferencia que hubiere, el total de dichos sobrantes será prorrateado por partes iguales entre todos los miembros pensionados en proporción a la cantidad a que respectivamente tienen derecho.

"En el caso de cualquier heredero de un miembro antiguo de la fuerza, con derecho el primero a una anualidad temporal antes de la fecha de aprobación de esta Ley, la anualidad será fijada en $240

por año y continuada por un término que no exceda de diez (10) años a partir de la fecha del fallecimiento del miembro antiguo de la fuerza.''

La sección 7 que acabamos de transcribir fué enmendada por la Ley núm. 18 de julio 15 de 1935, quedando redactada en la forma siguiente:

''Sección 7.—En el caso de antiguos miembros de la Fuerza de la Policía que, antes de entrar en vigor esta Ley, hubieren sido retirados con pensión de acuerdo con las disposiciones de la Ley de julio 16, 1921, o de dicha ley según ha sido enmendada, la anualidad será pagada de acuerdo con las disposiciones del inciso (1) de la sección 5 de esta Ley.''

La contención de los pensionados demandantes es que cuando terminó el año económico 1934–35, con un sobrante de asignaciones del Gobierno Insular suficiente para pagar a dichos pensionados la diferencia entre la cantidad que les concede la Ley núm. 70 de mayo 3 de 1931 (inciso 1, sec. 5) y aquella a que tenían derecho por virtud de la ley vigente en la fecha de su retiro (Ley núm. 68, 1921, y Ley núm. 86, 1925), ellos adquirieron el derecho a que se les pagase dicha diferencia con cargo a dicho sobrante, de acuerdo con lo dispuesto por la sección 7 de la Ley núm. 70 de 1931, supra; y que ese derecho así adquirido no puede ser afectado o menoscabado por legislación posterior.

La contención de los demandados es que en la fecha en que se radicó la demanda, octubre 27 de 1937, ya el Gobernador carecía de autoridad para hacer los pagos, por haber sido revocada la que le concediera la sección 7 de la Ley núm. 70 de 1931, supra.

Es indudable que tratándose de un sistema de pensiones de carácter compulsorio, como lo es el establecido para el retiro de los miembros de la Policía Insular por la Ley núm. 68 de 1921, enmendada por la núm. 86 de 1925, la Asamblea Legislativa tenía facultad para reducir en cualquier momento el montante de las futuras pensiones, como lo hizo mediante la aprobación de la sección 5, inciso (1) de la Ley núm. 70

de 1931. Véanse: *MacLeod* v. *Fernández,* 101 F. (2d) 20;
21 R.C.L. 242; *City of Dallas* v. *Trammell,* 129 Tex. 150,
101 S. W. (2d) 1009; *Dodge* v. *Board of·Education,* 364 Ill.
547, 5 N. E. (2d) 84; *Dodge* v. *Board of Education,* 302
U. S. 74, 82 L. Ed. 57; *Luján* v. *Comisión de la Policía
Insular,* 38 D.P.R. 58; y *García et al.* v. *Gallardo,* ante, pág.
166.'

■■ La cuestión envuelta y que debemos resolver es:
¿Tenían los demandantes en la fecha en que comenzó a
regir la Ley núm. 18 de julio 15 de 1935, un derecho adqui-
rido *(vested right)* para que se les pagase la diferencia de
sus pensiones con cargo al sobrante de las asignaciones del
año 1934–35, derecho que no podía ser afectado por legisla-
ción posterior? La pregunta debe ser contestada en la afir-
mativa.

Cuando en 1931 el legislador se vió obligado por la situa-
ción difícil que atravesaba el Tesoro Insular a reducir las
pensiones de que habían venido disfrutando los policías insu-
lares demandantes, las redujo en la forma provista por
la sección 5, inciso (1) de la Ley núm. 70 de 1931; pero,
queriendo proveer un sistema mediante el cual los policías
retirados del servicio pudieran recibir íntegra la pensión que
les concedía la ley vigente a la fecha de su retiro, cuando
la situación del Tesoro Insular lo permitiese, dispuso por la
sección 7 de la misma ley (supra) que si a la terminación de
cualquier año económico quedaba un sobrante de cualquier
asignación del Gobierno Insular, ese sobrante debía ser uti-
lizado por el Gobernador para pagar a los policías retirados
las sumas necesarias para completarles, por ese año econó-
mico, las pensiones fijadas por la ley de julio 16 de 1921. El
efecto legal de tal disposición fué el de reasignar y dejar
disponible para el pago del complemento de las pensiones,
las cantidades sobrantes de cualquier asignación del Gobierno
Insular.

Al terminar en 30 de junio de 1935 el año económico
1934–35, estando aún vigente la Ley núm. 70 de mayo 3 de

1931 y teniendo el Tesoro Insular un sobrante de asigna-ciones ascendente a \$122,137.82, quedó consolidado *(vested)* el derecho de los demandantes a que se les pague el com-plemento de sus respectivas pensiones con cargo a dicho sobrante. Y desde ese momento el Gobernador quedó obli-gado a hacer el pago.

■ La Ley núm. 18 fué aprobada y puesta en vigor en 15 de julio de 1935, cuando ya las pensiones que ahora recla-man los demandantes habían sido devengadas al amparo de la ley anterior y los demandantes habían ya adquirido el derecho a que esas pensiones les fueran pagadas del sobrante de las asignaciones del año 1934–35. La citada Ley núm. 18 de 1935 no contiene cláusula o disposición alguna que revele la intención legislativa de que la ley sea aplicada retroactivamente; pero si tal cláusula existiese, sería nula y anticonstitucional, porque en ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior (artículo 3, Código Civil).

■ La jurisprudencia que ya hemos citado, en la cual se sostiene la validez constitucional de estatutos que reducen el importe de pensiones fijadas por leyes vigentes en la fecha del retiro del pensionado, se refiere a pensiones futu-ras, no devengadas aún, y no a pensiones que ya han sido devengadas y son por tanto exigibles.

La regla general, expuesta en 21 R.C.L. 242, es como sigue:

"La regla aceptada es que una pensión concedida por las auto-ridades públicas no es una obligación contractual y sí una concesión gratuita, en la continuación de la cual el pensionado no tiene ningún derecho adquirido; y que por consiguiente una pensión es termina-ble a voluntad del que la concede, en todo o en parte. *Se concede, sin embargo, que cuando un pago determinado bajo una pensión se ha vencido, el pensionado tiene un derecho adquirido (vested right) sobre el mismo.*" (Bastardillas nuestras.)

En el caso de *People* v. *Retirement Board,* 326 Ill. 579, 158 N. E. 220, se dijo:

"En contra del estado o sus subdivisiones políticas no existe ningún derecho adquirido *sobre pensiones que han de devengarse en el futuro* de mes en mes." (Bastardillas nuestras.)

En *Dodge* v. *Board of Education,* supra, se resolvió que "plazos futuros de pensions no son derechos adquiridos de propiedad" y que "el Estado puede reducir *los plazos futuros* de pensiones sin violar las disposiciones de la constitución estatal o de la federal." Y en el mismo caso, se dijo:

"Bajo un estatuto tal como en *Pennie* v. *Reis,* supra, según el cual, al ocurrir cierto hecho (*event*), una cierta suma de dinero quedó devengada, el interés del beneficiario al ocurrir tal hecho es análogo al interés de un pensionado cuyo plazo de pensión se ha devengado bajo los términos de la ley de pensiones."

Y, por último, la Corte de Circuito de Boston, en *Mac-Leod* v. *Fernández,* supra, sostuvo que esta Corte Suprema había errado al resolver que al retirarse del servicio en 1931 el pensionado Fernández había adquirido un derecho a que se le pagasen las pensiones "a las cuales tenía derecho solamente cuando las mismas se devengasen en el futuro."

Habiéndose cumplido la condición fijada por el estatuto—la terminación del año económico 1934-35 con un sobrante de asignaciones—para que los demandantes tuviesen derecho a cobrar el complemento de sus pensiones, es inevitable llegar a la conclusión de que los demandantes adquirieron un derecho que no puede ser afectado por la legislación posterior. Esa legislación posterior revocó la autoridad del Gobernador para pagar pensiones que pudieran devengarse en el futuro, pero ni expresamente ni implícitamente pudo revocar la facultad de pagar sumas ya devengadas al amparo de la legislación anterior. Véase *Escartín* v. *Comisión Policía Insular,* 52 D.P.R. 725, en el que sostuvimos que las pensiones devengadas y no satisfechas constituyen un derecho adquirido.

*Por las razones expuestas se confirma la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.