(40 Misc. Rep. 297.)

### PEOPLE v. SCANNELL et al.

### SAME v. SCANNELL.

(Supreme Court, Trial Term, New York County.   March, 1903.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—ILLEGAL LETTING—INDICTMENT.

An indictment was found under the city charter of New York (3 Laws 1897, p. 148, c. 378, § 419) against the head of a city department for letting a contract over $1,000 to a bidder other than the lowest, where the head of the department had not rejected all bids, and the board of public improvements had not determined that it was for the public interest to accept a bid other than the lowest. The amended charter (3 Laws 1901, p. 186, c. 466, § 419) struck out the words "board of public improvements," and substituted therefor the words "board of estimate and apportionment." *Held,* not to make the indictment inoperative as to offenses committed before the latter charter went into effect, because there is not in existence at the present time any board of public improvements whose prior consent to such a letting is required, under the statutory construction act (Laws 1892, p. 1491, c. 677, § 31), providing that all criminal prosecutions commenced under a statute repealed, and pending prior to the repeal, may be prosecuted as they might have been if such provisions had not been repealed.

2. SAME.

In considering an indictment for letting a contract of over $1,000 to a bidder not the lowest, in violation of the city charter, the court cannot consider the question whether the higher bid accepted might not prove the lowest, because of the better quality of the article furnished thereby, where the charter makes the price the test of the bids.

3. SAME.

On an indictment for letting a city contract to one not the lowest bidder, it cannot be held that there was no lowest bidder because each of the two bidders bid the lowest price offered.

Indictments against John J. Scannell and William L. Marks and against John J. Scannell.   Demurrers to indictments overruled.

William Travers Jerome, Dist. Atty., for the People.
Nicoll, Anable & Lindsay, for defendants.

SCOTT, J.   The defendants, Scannell and Marks, are jointly indicted for a criminal conspiracy, and the defendant Scannell is separately indicted for criminal neglect of duty.   Both indictments are based upon alleged violations by Scannell, while fire commissioner, of section 419 of the first Greater New York charter (Laws 1897, c. 378), which prescribed the method to be adopted by heads of departments in letting contracts for public supplies.   That section required that all contracts involving an expenditure of over $1,000 should be founded on sealed bids or proposals made in compliance with public notices, duly advertised.   It was then made the duty of the head of a department, unless he should deem it to the interest of the city to reject all bids, to "award the contract to the lowest bidder, unless the board of public improvements, by a vote of a majority of its members, of whom the mayor and comptroller shall be two, shall determine that a bid other than the lowest shall be accepted."   The offense charged is that divers contracts were let to another bidder than the lowest, without the requisite authority from the board of public improvements.   The section quoted contained other regulations respecting the letting of

public contracts; providing, among other things, that all contracts should be made under regulations to be adopted by the municipal council. In 1901 the Legislature passed an act (chapter 466) amending the charter of 1897, and, in effect, creating a complete new charter. By this act, section 419 of the former charter was re-enacted in identical words, except that the "board of aldermen" was substituted for the "municipal council" wherever the latter words appeared, and "board of estimate and apportionment" was substituted for the "board of public improvements" in the clause providing for consent to the letting of a contract to other than the lowest bidder. The defendants urge that this amendment of the section has repealed the provision which the defendant Scannell is charged with violating; citing the familiar rule that a statute re-enacting a former statute, and providing that certain sections thereof shall be amended "so as to read as follows," repeals, by implication, everything contained in the sections of the original act not re-enacted. The contention is that so much of the original section 419 as forbade the letting of a contract to other than the lowest bidder without the consent of the "board of public improvements" has thus been repealed. Upon this contention follows the second—that this clause of the section, which is the one which the defendants, Scannell and Marks, are charged with having conspired to violate, and Scannell is charged with having actually violated, having been repealed, there is now no support in law for these indictments. This contention rests upon the well-established rule of the criminal law that whenever a statute creating a criminal offense is expressly repealed, or that portion of it which is essential to sustain an indictment drawn under its provisions is stricken out by a law subsequently enacted, the former, unless a contrary intent upon the part of the lawmakers appears, will be held inoperative, even as to offenses committed before the passage of the later act. That the particular provision which the defendant Scannell is charged with having violated has been repealed cannot, I think, be doubted. It would not now charge a violation of law to say, of a head of a department, that he had let a contract to other than the lowest bidder without the previous consent of the board of public improvements, because that body no longer exists, and its consent is no longer required. It is true that a similar consent is in like cases required of the board of estimate and apportionment, but Scannell is not charged with having let a contract without the consent of that board. Unless, therefore, the Legislature has in some way indicated its intention that the repeal of this provision shall not have the effect, which it would have had at common law, of ending all prosecutions for violation of the repealed provision, these indictments must fall.

The amended charter of 1901 does not contain any saving clause, applicable to section 419 of the former charter, which in terms preserves and keeps alive prosecutions for violations committed prior to the passage of the amendatory act. There is contained in the second section of the act such a saving clause, which is made applicable only to the sections expressly repealed, and which are enumerated in a schedule attached to the act, and denominated the "First Schedule." Section 419 is not included in this schedule. The statutory construc-

tion act (Laws 1892, p. 1485, c. 677), however, contains in its thirty-first section a general saving clause applicable to all actions or proceedings, civil or criminal, commenced under or by virtue of a repealed statute, and pending immediately prior to such repeal. It has been distinctly held that this section applies to all future legislation enacted after its adoption. People ex rel. City of Buffalo v. N. Y. C. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312. Its terms are sufficiently broad to save the present prosecution, unless there is to be found in the amended charter of 1901 some expression or omission which serves to indicate a legislative intent that it shall not apply to section 419 of the former charter. It is not contended that there is any expression indicating such intent, but it is urged that inasmuch as the Legislature incorporated into the charter a special saving clause, which it specifically made applicable to certain sections and not to others, it must be deemed to have intended that saving clause to be the only one applicable to that particular act, and hence that it intended that no saving clause at all should apply to the sections of the former charter which were amended, but were not included in the first schedule. The broad and general language of section 31 of the statutory construction act, which, as it has been held, was intended to apply to all future legislation, indicates an intention on the part of the Legislature to reverse the common-law rule as to the effect of a repealing statute upon prosecutions commenced before the repeal under the provisions of the repealed statute. Doubtless it is within the power of the Legislature to again restore the former rule, either as to all repealing statutes, or as to any particular statute. It will not, however, be deemed to have done so by mere implication, unless the intent is made very clearly to appear. I find no evidence of such an intention in the charter of 1901. There were many sections in that charter, and section 419 was one of them, which were re-enacted in the precise form, or substantially in the same form, as the corresponding sections of the charter of 1897, except for the changes made necessary by the abolition of certain boards and officers, and the devolution of their duties upon others. As to these sections, it was provided (section 2) that, so far as they are substantially the same as those of laws existing on December 31, 1901, which includes section 419 of the earlier charter, they shall be construed as a continuation of said laws, modified or amended according to the language employed in the new act, and not as new enactments. This is a clear expression of the legislative will that sections like 419 of the earlier charter, although to some extent modified by the new charter, should not be deemed to be repealed thereby, but, on the contrary, to have remained continuously in force. It is impossible to find in such language even an implied intention that as to such sections the general saving clause of the statutory construction act should become inoperative, and that the old rule upon which the defendants rely should be restored. My conclusion is that this objection to the further prosecution of the indictments cannot prevail.

Various objections are urged to the indictments against the defendant Scannell based upon a supposed failure to allege all the facts necessary to show that the defendants have committed any offense. They

rest for the most part upon a misapprehension as to the real gravamen of the charge against the defendants. One of the indictments (and the other is similar, save as to name and quantities) charges that the defendant called for and received various sealed bids and proposals for 15,000 feet of fire hose; that the Manhattan Rubber Manufacturing Company and the Mineralized Rubber Company each offered to provide the hose for 85 cents per foot, which two corporations by the said bids then and there were and became the lowest bidders for said contract; that it thereupon became the duty of the defendant, as fire commissioner, if he should not deem it for the interest of the city to reject all bids, to award the contract to the said Manhattan Rubber Manufacturing Company and Mineralized Rubber Company, or to one of them, unless the board of public improvements should determine it to be for the public interest that a bid other than those should be accepted. Then follows the charge against the defendant that he did wholly neglect and omit to perform the duty so enjoined by law upon him as aforesaid, and did willfully and unlawfully neglect and omit to award said contract to the said Manhattan Rubber Manufacturing Company or Mineralized Rubber Company, or either of them, but, on the contrary (and here comes the real offense), did then and there award the said contract to a certain corporation called the Akron Rubber Company, which said corporation was not the lowest bidder therefor, but which corporation, on the contrary, in its bid therefor, had offered to provide the said hose for $1 for each foot thereof; the board of public improvements not having determined that it was for the public interest that the said bid of the said Akron Rubber Company, or any other bid than those of the Manhattan Rubber Manufacturing Company and Mineralized Rubber Company, should be accepted. The offense charged here is the award of the contract to one not the lowest bidder, without previous consent by the board of public improvements. It is not that he failed to award the contracts to the other companies named, for he might have lawfully rejected all bids. The charge is that he first determined not to reject all bids, that his duty then was to award the contract to the lowest bidder, and that he committed an offense by making the award to a bidder who was not the lowest. I find no essential allegation of fact lacking in the indictments.

It is urged that, for aught that is alleged in the indictments, the Akron Company's bid, although the highest in price, might in fact be the lowest by reason of the superior quality of the article that company proposed to furnish. It may often be true that it will be found economical to purchase a better article at a higher price than a poorer article at a low price. The only test of bids made under the charter is, however, that of price. It is the duty of a commissioner inviting bids for supplies, to clearly indicate, by standard, description, test, or sample, the kind and quality of goods which he requires. Every bidder will be presumed to offer goods of the kind and quality thus indicated, and thus the price at which each offers to supply such goods affords the only standard by which the bids can be compared in order to ascertain which is the lowest. It is not to be anticipated that any bidder will furnish goods of a better kind or quality than are called

for, and it will be the duty of the commissioner to see to it that a poorer kind or quality is not accepted. The rule for testing bids suggested by the defendant would open a wide door to evasions of the restrictive provisions of the charter.

It is further suggested that inasmuch as it appears that there were two bidders who offered to supply the hose at the identical price, that being lower than that of any other bidder, it cannot be said that there was any lowest bidder, and hence that the contingency contemplated by the statute had not arisen, and therefore that there was no statute applicable to the situation, and which forbade the awarding of the contract to any bidder—even the highest. I cannot accept this contention as being made seriously or as meriting discussion.

A further objection is made to the conspiracy indictment that.it is multifarious. If the question thus suggested was a new one, its discussion would be interesting. I do not, however, deem it open for discussion. Similar indictments, as to which the same defect was charged, have repeatedly been upheld. People v. Willis, 158 N. Y. 392, 53 N. E. 29; People v. Klipfel, 160 N. Y. 371, 54 N. E. 788; People v. Herlihy, 66 App. Div. 534, 73 N. Y. Supp. 236, affirmed on opinion below in 170 N. Y. 584, 63 N. E. 1120. The demurrers must be overruled.

Demurrers overruled.