PUBLIC SERVICE COMMISSION, SECOND DIST., v. BOOTH.

(Supreme Court, Special Term, Albany County.   September 18, 1915.)

1. MUNICIPAL CORPORATIONS ☞592—REGULATION OF VEHICLES—PROVISIONS OF CHARTER—REPEAL.

The provisions of the Rochester city charter conferring on the common council power to regulate the use of streets are not repealed, for repugnancy, by Laws 1909, c. 219, § 26, as amended by Laws 1915, c. 667, § 2, regulating the operation of motor vehicles carrying passengers for less than 15 cents or in competition with certain common carriers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1311–1314; Dec. Dig. ☞592.]

2. LICENSES ☞1—DEFINITION.

A "license" is a right granted by some authority to do an act which without such authority would be illegal (quoting Words and Phrases, "License").

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1; Dec. Dig. ☞1.]

3. LICENSES ☞36—REGULATION OF VEHICLES—CHARTER PROVISIONS—JITNEY BUS ACT—EFFECT.

Where the owner of a jitney bus was granted a license, under the Rochester city charter, empowering the city to license hackmen, whereby he was authorized to carry on the business of a public vehicle" for one year, and before the expiration of the license Laws 1915, c. 667, became effective, whereby operators of motor vehicles carrying passengers for 15 cents or less, or in competition with certain common carriers, were required to obtain a certificate of public convenience and necessity, after obtaining the consent of the city to operate, upon notice and public hearing, the owner did not have the right to operate until the expiration of the license, without complying with the act of 1915, since such license was not a contract or vested right, within General Construction Law (Consol. Laws, c. 22) § 93, declaring that the repeal of a statute shall not impair a right accruing previous to such repeal, but was a mere statutory privilege, subject to revocation at will by the Legislature.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 70–72; Dec. Dig. ☞36.]

4. LICENSES ☞36—PUBLIC VEHICLES—JITNEY BUS STATUTE—EFFECT.

The mere legislative permission to operate a public vehicle granted by a city license will not be held to postpone the taking effect of a statute imposing other conditions on the operation of a motor vehicle, as a jitney bus, when such statute is designed to effect the legislative intent to immediately check irresponsible competition with public utilities, which bear a share of the public burden in franchise taxes and street maintenance.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 70–72; Dec. Dig. ☞36.]

5. MUNICIPAL CORPORATIONS ☞661—USE OF STREETS—POWER OF LEGISLATURE.

The Legislature has full power to determine the requirements of using city streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. ☞661.]

Action by the Public Service Commission, Second District, for an injunction to prevent Elmer G. Booth from operating his jitney bus. Injunction granted.

Frank H. Mott, of Albany, for plaintiff.
Richard R. B. Powell, of Rochester, for defendant.

HASBROUCK, J.   [1] The charter of the city of Rochester has for some time past empowered the common council to enact ordinances for the licensing "of hackmen and cartmen, which shall be construed to cover the carrying of persons or personal property by any vehicle for hire." Municipal Code of the City of Rochester, c. 2, art. 1, § 4, Licensed Occupations, passed October 11, 1904. On the 3d day of March, in pursuance of the terms of said ordinance, the mayor and city clerk signed and delivered to the defendant, upon his payment of a license fee of $1, a license "to carry on the business of public vehicle within the said city until December 31, 1915, subject to all ordinances of the common council now or hereafter passed relating to this subject." Since such date the defendant has operated what is known as a "jitney bus" upon certain streets of that city. On or about the 22d day of May, 1915, a law went into effect providing, among other things, as follows:

"Sec. 25. Any person * * * who * * * owns or operates * * * motor vehicle line or route or vehicles * * * shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated. * * *

"Sec. 26. No * * * motor vehicle line or route, * * * nor any vehicles carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof shall be operated, * * * nor receive a certificate of public convenience and necessity until the owner * * * shall have procured, after public notice and a hearing, the consent of the local authorities of said city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe, * * * and no such operation upon the streets of any such city shall be permitted until the owner * * * of such vehicles * * * shall if required by such local authorities have executed and delivered a bond to such city in an amount fixed by said local authorities * * * with sureties satisfactory to the chief fiscal officer. * * *"

The Public Service Commission of the Second District has petitioned the court, pursuant to section 57 of the Public Service Commissions Law (Consol. Laws, c. 48), for an injunction restraining the defendant from operating his jitney. There is but a single question presented by the petition and the answer, and that is whether the license held by the defendant is revoked and annulled by the provisions of the statute of 1915 above quoted. The defendant claims that, notwithstanding the additional requirements prescribed by the new law, his license remains. Whether or not it does depends upon the significance of section 93 of the General Construction Law of the state, which provides as follows:

"The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, * * * but the same may be enjoyed, asserted, * * * as fully and to the same extent as if such repeal had not been effected."

There is no repeal in express terms of the provisions of the municipal charter conferring power upon the common council to enact or-

dinances for the regulation of the use of the streets of the city. Nor in our judgment is it repealed by implication. The city law authorizing the licensing of hackmen and section 26 of chapter 667 of the Laws of 1915 are not repugnant. If this be so, then there remains but the status of the license. The argument of the defendant is that section 93 of the General Construction Law saves from repeal such permission or privilege as that represented by the license. This must necessarily depend upon what a license is.

[2] One definition of a license is:

"A license is a right granted by some competent authority to do an act which without such authority would be illegal." Words and Phrases, vol. 5, p. 4137.

The language of the General Construction Law is used in connection with the words "accruing, accrued or acquired." It would cause no strain upon logic to contend that what the city authorities granted the defendant "acquired."

[3] It is argued, if the Construction Law contemplates such a right as that of this license, then, of course, such right is preserved during the life of the license against the effect of the new law regulating jitney operations. The defendant claims there is authority to support his contention. One Ryan was deputy clerk of the Court of Special Sessions of the City of New York, and was chosen a member of the Legislature in 1872, which office he accepted. April 30, 1873, an act was passed which provided, among other things, that:

"Any person holding office whether by election or appointment, who shall, during his term of office, * * * hold any other civil office * * * of the state * * * or who shall accept a seat in the legislature, shall be deemed thereby to have vacated every office held by him under the city government. * * *" Laws 1873, c. 335, § 114.

The city refused to pay him as said clerk, and he brought a mandamus against Andrew H. Green, comptroller, to compel him to pay. Regarding the effect of the law Judge Folger says:

"The point made by the appellant, that section 114 [hereinabove quoted] operates to vacate the office of deputy clerk, held by the relator, is not tenable. The language of the section is prospective. A law may not operate upon existing rights and liabilities without it in terms expresses such intention. * * * Though there is no vested right to an office, which may not be disturbed by legislation, yet the incumbent has, in a sense, a right to his office. If that right is to be taken away by statute, the terms should be clear in which the purpose is stated." People ex rel. Ryan v. Green, 58 N. Y. 295.

[4] It must be admitted that there is much force in the argument of the defendant; but I do not think it is conclusive. In searching the purpose of legislators in enacting laws, it is proper to look at the situation which was open to remedy. The statute speaks of "competition with another common carrier." The law having reference to that competition undertook to deal with it immediately. The effect of jitney transportation upon street car lines was extremely injurious; for the street railroad company had to bear, among other expenses, that of the special franchise tax and of maintenance of streets between tracks and for two feet outside, while the jitney had the use of the

streets free. These circumstances, it seems to me, are sufficient to determine what the Legislature meant. It meant that this competition should be immediately checked by requiring "any person * * * who owns or operates * * * to obtain a certificate of convenience and necessity * * *" of the Public Service Commission and consent to operate over the streets upon such terms and conditions as the local authorities shall prescribe. It meant to protect "other common carriers" against competition and the city against injury to its streets without the return of a proper consideration. There is no repeal of the Rochester charter in this act. There are only additional conditions prescribed for the operation of the jitney.

[5] The Legislature has full power to determine the requirements of using the city streets. It was dealing with an existing condition, and I think its purpose was to change that condition immediately. Should a license representing a mere legislatively conferred permission or authority be sufficient to postpone the taking effect of the statute, then one who held a license for 20 years could for that length of time carry on the competition, which might work the destruction of public utilities and the great injury of the public. The license relied upon does not seem to me to be the "right" spoken of in General Construction Law, § 93. That law merely states the established rule. The license, being a child of the statute, and not of the nature of a contract, nor of the class known as vested rights, is susceptible of revocation or annulment at any time at the will of the creating power.

Motion for injunction granted, but time given to the defendant to apply, and have action upon his application, for the statutory consents, not to exceed 30 days