THOMAS, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 8—April 2, 1935.*

*W. T. Doar* of New Richmond, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Thomas F. Millane* of Milwaukee, special prosecutor, and *A. C. Barrett,* district attorney of Washburn county, and oral argument by *Mr. Millane, Mr. Barrett,* and *Mr. J. E. Messerschmidt,* assistant attorney general.

WICKHEM, J.    While the information was in fourteen counts alleging separate offenses, all of the counts charge the

violation of sec. 221.31, Stats. 1927. This section reads as follows:

"221.31 *Loans to bank officials; penalty.* Every president, director, cashier, officer, teller, clerk or agent of any bank or mutual savings bank who, without authority by resolution of the board of directors previously made and recorded upon its minutes and without one or more indorsers, the responsibility of whom shall have been approved by like previously recorded resolution or in lieu of such indorser or indorsers, collateral security the sufficiency of which shall have been approved by like previously recorded resolution, directly or indirectly borrows or otherwise procures for his use money, funds or property of the bank or mutual savings bank in excess of one thousand dollars in amount or value upon his credit or through use of the credit or accommodation of another person, firm or corporation or by acceptance for discount at said bank or mutual savings bank any note, bond or other evidence of debt which he knows or has reason to know is worth less than the price at which it is accepted as an asset for the bank or mutual savings bank, shall be punished by imprisonment in the state prison not exceeding ten years."

The violations alleged against defendant had to do with loans on dates beginning April 22, 1928, and ending March 14, 1931. At the times in question defendant was president and director of the Spooner State Bank, and all of the charges relate to loans from this bank. Each count alleges that on the occasion in question the defendant, "without authority by resolution of the board of directors of said banking corporation, previously made and recorded upon its minutes, and without an indorser whose responsibility had been approved by like previously recorded resolution, and without collateral security, the sufficiency of which had been approved by like previously recorded resolution, directly or indirectly, borrowed and procured for his own use funds and property of said banking corporation in excess of $1,000 in amount, upon his credit." Defendant contends that the evidence does not

sustain the conviction. Since this contention is grounded upon both questions of law and questions of fact, it will be convenient to consider these contentions separately.

Count 3, upon which defendant was convicted, is sought to be supported by evidence that on July 21, 1928, defendant borrowed upon his note the sum of $1,000; that on that date he already owed the bank $200 upon his note; that jointly with one E. M. Elliott, vice-president and a director of the bank, he then owed the sum of $753, the balance due upon a note previously given, and upon which certain payments had been made; that on that date the wife of defendant, Jennie M. Thomas, owed a note to the bank of $800, which note was in fact to secure a loan to defendant. The evidence is clear that none of the statutory requirements were satisfied with respect to these loans. The violation is arrived at by taking the aggregate of the four notes.

The first contention of defendant is that, since no single loan exceeds $1,000, and since these are four distinct loans, no one of which was in excess of the statutory limit, the statute is not violated. In other words, the contention is that the statutory prohibition is directed at a particular borrowing, and that separate loan transactions may not be added together and the aggregate used to evidence a violation of the statute. It is pointed out that sec. 221.31, as it was in force on July 21, 1928, was repealed by ch. 252, Laws of 1931, and a new section carrying the same section number substituted for it. The new section provides that no bank shall loan more than $1,000 *in the aggregate* to any director, officer, or employee, except upon conditions which are closely similar to those prescribed by the former section. It is argued from this, that the law as it existed at the times material to this action did not deal with the aggregate amount of loans but with the amount of a single loan, and that it was considered by the legislature necessary to repeal the statute or to amend it in order to achieve the result which the present law clearly ac-

complishes. There is no merit to this contention. The language of the section as it formerly existed is susceptible of the construction that no officer or director of a bank may borrow more than $1,000 in the aggregate, and to give the statute any other construction would completely emasculate it and reduce it to an absurd and ineffective piece of legislation. If the law is subject to the construction urged by defendant, an officer could wholly deplete the capital of a bank by loans on successive days, each under $1,000, and do so with impunity. This was not the legislative intent.

The next contention is based on the fact that sec. 221.31, as it now exists, does not amend the former section, but that ch. 252, Laws of 1931, expressly repealed the old section. It is contended that the complete repeal of the section, without a saving clause keeping alive the penalties, makes it impossible to found a prosecution upon the repealed section. This contention is answered by sec. 370.04, which provides that a criminal prosecution founded upon a repealed statute, whether instituted before or after the repeal, shall not be defeated by the repeal of the statute, "unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute." The contention of defendant is that the complete repeal of sec. 221.31 by ch. 252, does away with the whole of the statute, including the penalties, but sec. 370.04 specifically provides otherwise and requires an express abrogation or remission of offenses and penalties. *Halbach v. State,* 200 Wis. 145, 227 N. W. 306; *Whaley v. State,* 200 Wis. 267, 227 N. W. 942; *Milwaukee v. Krupnik,* 201 Wis. 1, 229 N. W. 43. We therefore hold that defendant's contention is without merit.

Assuming the statute to penalize loans of more than $1,000 in the aggregate, which do not satisfy the statutory requirements, and further assuming the penalties prescribed by

sec. 221.31, Stats. 1927, not to have been remitted by its repeal, it is contended that the evidence does not sustain the conviction for several reasons. The first is that there is no evidence with respect to count 3 that any of the proceeds of these loans were received by defendant "for his use." This attack is principally directed at the $1,000 note and the $200 note, and the reason for the attack is apparent. The $1,000 note was executed July 21, 1928, and the $200 note had previously been executed. If these loans were completed to the extent that the proceeds of both had come into the hands of defendant "for his use" prior to July 30, 1928, he clearly violated the statute with respect to those two notes, without regard to the status of the Elliott loan of $753, or the Jennie M. Thomas loan of $800. The latter two notes will be eliminated from further consideration here, for the reason that in every count in which the inclusion of one or both of them was necessary to sustain a conviction, the jury acquitted the defendant upon evidence that would support the inference that he did not procure the proceeds of these notes "for his use."

The state sought to prove by the liability ledger of the bank that the $200 and $1,000 loans were actually made, and it is defendant's contention that, while the ledger shows notes for $200 and $1,000, respectively, it does not show a transfer of the proceeds to the account of Thomas, or in any manner prove that Thomas ever got the proceeds. The ledger sheets showing Thomas' account—his deposits and withdrawals— are in evidence, but they do not go back as far as July 21, 1928, so that there is a break in the state's proof as far as actually showing a credit to Thomas of the proceeds of these notes, or their use by Thomas through checks drawn upon his account. Incidentally, it is contended by defendant that the mere crediting of the amount of the loan to defendant on the books of the bank would not be enough to complete the transaction and establish the violation; that the loan is made,

at least so far as violation of the statute is concerned, when the money is used, presumably by withdrawing it upon check. This presents a troublesome question, but one which, for reasons that will hereafter appear, we do not find it necessary to determine at this time.

Returning to the principal contention, it is our conclusion that the evidence is sufficient to support the conclusion of the jury that by July 30, 1928, defendant had received the proceeds of both loans for his own use. Defendant offered in evidence, for the purpose of showing good faith and lack of criminal intent, that the $1,000 note was repaid to the bank on September 24, 1928, and that the $200 note was paid nine days after the $1,000 loan on July 30, 1928. The books of the bank likewise show payments on these dates. It also appears that the $200 note was paid out of the proceeds of the $1,000 loan. This evidence was offered for the purpose of showing that, excluding the Elliott and Jennie M. Thomas loans, there was no increase in indebtedness beyond the $1,000 limit by reason of the $1,000 loan on July 21st. The fact that both notes were ultimately repaid, and that the smaller loan was paid from the proceeds of the larger one, is evidence from which the jury could conclude that by July 30, 1928, the proceeds of the loans were in defendant's hands.

Defendant's next contention is that, since the $200 note was paid out of the proceeds of the $1,000 note, there was no increase of indebtedness by the transaction. On the other hand, since the $1,000 note was executed on July 21st, and since the $200 note was not paid until July 30th, it is claimed by the state that there is at least a period of nine days during which both notes were outstanding. This raises the question whether the fact that defendant repaid the loans, which supports the inference that at some time not later than July 30, 1928, he received their proceeds for his own use, would also warrant the jury in finding beyond a reasonable doubt that he received the proceeds upon the respective dates when the

liability ledger charges them to his account. If it would, then the evidence warrants a conviction, since, as heretofore stated, there would be a period of nine days when he had the proceeds and sustained a liability in excess of $1,000. Upon this point we think the state's case must fail. The fact that the notes were charged upon a particular date cannot, for purposes of sustaining a conviction, warrant the inference beyond a reasonable doubt that the proceeds were received for the use of the debtor upon that date. The only evidence of the crediting of the proceeds of the $1,000 loan to defendant, or their use by him, relates to July 30, 1928, on which date he took up the $200 note. There is no basis for a conclusion beyond a reasonable doubt that the funds were received "for his use" prior to that date. This being true, the jury was not warranted in concluding that defendant's indebtedness as a result of these loans ever exceeded $1,000, and the conviction must be set aside.

Defendant is entitled to have determined the question "whether there was adduced upon his trial evidence which, if believed by the jury and rationally considered, was sufficient to prove his guilt beyond a reasonable doubt." *Parke v. State,* 204 Wis. 443, 235 N. W. 775. The inference failing to meet the prescribed test, it follows that judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge defendant from custody.