## HUTTON v. AUTORIDAD SOBRE HOGARES DE LA CAPITAL.

Civ. No. 5086.

District Court, Puerto Rico.

July 23, 1948.

Celestino Iriarte, F. Fernandez Cuyar and H. Gonzalez Blanes, all of San Juan, P. R., for plaintiff.

James R. Beverley, of San Juan, P. R., for defendant.

CHAVEZ, District Judge.

Plaintiff's amended complaint filed April 28, 1948, against the Autoridad sobre Hogares de la Capital, hereinafter referred to as the Housing Authority, alleges that on and before the year 1940, plaintiff was the owner in fee simple of the land described in the amended complaint; and in 1940, the defendant filed suit against the plaintiff for condemnation of said lands; and on January 14, 1941 the District Court of San Juan rendered final judgment of condemnation of said properties in favor of defendant and awarded plaintiff the sum of $68,965.74 as full compensation for all damages caused plaintiff by said condemnation. Defendant entered into possession of said properties.

Plaintiff further alleges that the lands were expropriated by defendant for the express and avowed purpose of "developing its program of low cost home construction, and specifically for the construction of "Project P.R.-2-3", and that it needed said lands in order "to provide low-cost sanitary and decent homes for persons of moderate income in the Capital of Puerto Rico, that is, San Juan, and in order to eliminate slums within the Capital of Puerto Rico".

Plaintiff then alleges that over seven years have elapsed since the final judgment of condemnation in favor of defendant, but nevertheless, defendant has not utilized the lands condemned for the purpose for which they were expropriated from plaintiff, or for any other purpose, and specifically defendant has not constructed or developed on said lands "Project P.R.-2-3", nor any other low-cost housing project, nor has plaintiff provided in said lands condemned low-cost sanitary and decent houses for persons of moderate income in the Capital of Puerto Rico, that is, San Juan; nor has plaintiff eliminated slums in said lands.

Plaintiff further alleges that the lands condemned by defendant were voluntarily leased by said defendant to a third party for purposes wholly foreign and different from those for which said lands were expropriated, and alleges further that plaintiff has deposited with the Clerk of the Court the sum of $68,965.74, which sum is offered and tendered to defendant as being the amount received from said defendant by virtue of the judgment of condemnation.

The defendant Housing Authority on May 5, 1948, filed a motion to dismiss the amended bill of complaint on three grounds, to wit:

1. The Amended Bill of Complaint alleges in paragraph 5 thereof that the lands involved in this suit are leased by defendant to a third party. Such third party, in accordance with the laws of Puerto Rico, is an indispensable party to this proceeding and has not been made a defendant herein and there is, therefore, a lack of parties defendant.

2. In accordance with the Act of Congress of September 1st, 1937 (50 Stat. 888 [42 U.S.C.A. § 1401 et seq.]) the United States Housing Authority is an indispensable party in this proceeding and has not been sued herein.

3. The defendant herein is an agency and instrumentality of the Government of Puerto Rico and the article of the statute under which plaintiff brings this present suit, to wit, Section 7 of the law regulating expropriation proceedings approved March 12, 1903, as amended, is not applicable to the Government of Puerto Rico, its agents and instrumentalities, consequently the complaint does not state facts sufficient to constitute a cause of action against defendant.

On May 14, 1948, the defendant filed a Supplementary Motion to Dismiss Amended Bill of Complaint, in which motion defendant repeats and re-affirms the grounds for dismissal set forth in its motion dated May 5, 1948, and on the further ground that the section of the statute under which plaintiff has brought suit, to wit: sec. 7 of the Expropriation Law of Puerto Rico, has been repealed by virtue of Act 105 of the Legislature of Puerto Rico, approved by the Governor of Puerto Rico on May 11, 1948, which statute took effect upon the date of its signature in accordance with the terms thereof.

The defendant contends that the right of the plaintiff to bring suit under Sec. 7 of the Expropriation Act, was purely a statutory right and that when the Statute (Sec. 7) was repealed, such right ceased to exist and the right of action is terminated.

The plaintiff concedes the rule to be as cited by Sec. 2042, 1 Sutherland, Statutory Construction, 3d, Ed., p. 522–523, as follows: "Sec. 2042. Effect of repeal, etc. The effect of the repeal of a statute where neither a saving clause nor a general saving statute exists to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute, which, except as to proceedings past and closed, is considered as if it had never existed."

However, plaintiff contends that the above principle does not govern where a saving clause exists, either in the statute itself or in a general saving statute. Plain-

tiff relies on Sec. 386 of the Political Code of Puerto Rico as a saving clause and claims further that the effect of a general saving statute is to preserve the action as it existed and is in harmony with Sec. 3 of the Civil Code of Puerto Rico, Ed., 1930.

The statutes pertinent to this case are as follows:

Sec. 282, Civil Code of P. R., Ed. 1930 provides as follows: "No person shall be deprived of his ownership, except it be by a competent authority and for a justified purpose of public utility, and after having been properly indemnified."

Sec. 7 of the Expropriation Act of Puerto Rico, approved March 12, 1903, as amended by the Act approved March 12, 1908, which provides as follows: "Sec. 7 (As amended by act of Mar. 12, 1908, p. 94). In all cases of condemnation, sale, transfer or voluntary encumbrance of property for the performance of a work of public utility, whenever such work is not completed within the time fixed by the concession or franchise, or, in case no time is so fixed, within the term of six months, counting from the date on which the final decision ordering the condemnation was rendered, the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership shall have a right of action to recover the property condemned, returning the amount received."

Act No. 105, Laws of Puerto Rico approved May 11, 1948, reads as follows: Sec. 3. "Sec. 7 of the Act to Provide for the Condemnation of Private Property for the purposes and under the conditions therein named, approved March 12, 1903 as subsequently amended, is hereby repealed."

Sec. 386 of the Political Code of Puerto Rico, provides as follows: "The repeal of any statute by the Legislative Assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

Sec. 3 of the Civil Code of Puerto Rico, Ed. 1930, provides as follows: "Sec. 3.— Laws shall not have a retroactive effect unless they expressly so decree. In no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action."

The defendant in his brief relies principally upon the matters raised in its supplementary motion to dismiss, that is, that Sec. 7 of the Expropriation Act of Puerto Rico was repealed by Act No. 105, approved May 11, 1948.

 Points 1 and 2 are ruled against the defendant. Point 3 is ruled against the defendant. (Autoridad sobre Hogares de Puerto Rico v. Corte de Distrito de Arecibo, Hon. R. Agrait Aldea, Juez, No. 1718, decided by the Supreme Court of Puerto Rico on January 23, 1948.)

We come now to consider the matters raised by the Supplementary Motion to Dismiss.

Sec. 386 of the Political Code of Puerto Rico is identical with the Federal Statute. See Title 1 U.S.C.A. § 29, and Sec. 109, same title.

This section was derived from the Act of February 25, 1871, and was incorporated in U. S. Revised Statutes as Sec. 13.

This section has been construed by the courts not as an attempt to limit the power of Congress or the Legislature, but merely prescribes a rule of construction, binding upon the courts, as a substitute for the common-law rule with respect to the effect of a repealing statute, as a release from penalties and prosecutions for offenses committed under the statute repealed, and under it the repeal of a penal statute extinguishes no penalties previously incurred thereunder in the absence of an expressed extinguishing clause in the repealing act. (see cases cited 1 U.S.C.A. § 29)

The Federal courts have construed the words "penalty", "forfeiture" and "liability", as being synonymous with "punishment", in connection with crimes of every grade, and the section was intended to apply to all offenses. United States v. Ulrici, Fed. Cas. No. 16, 594; United States v. Van Vliet, D.C., 23 F. 35, reversing D.C., 22 F. 641.

It should be noted that all of the above cases referred to, covered a period approximately from 1870 to 1910. In that year Hertz v. Woodman, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001, was decided. This case held that the section (R.S. § 13), was not alone applicable to penalties and forfeitures under penal statutes but extends as well to "liabilities", and a liability or obligation to pay a tax imposed under a repealed statute is not only within the letter, but the spirit and purpose of the provision.

The Supreme Court of Puerto Rico applied the principles outlined in Hertz v. Woodman, supra, in P. R. Ilustrado v. Buscaglia, 64 DPR 914.

The Supreme Court of Puerto Rico has also held that Sec. 386 is a saving clause. (People v. Arecco, Adv. Sheet, 67 DPR 322; People v. Valentin, 39 PRR; People v. Rodriguez, PRR 34 and P. R. Ilustrado v. Buscaglia, supra.

Sec. 3, Civil Code of Puerto Rico, 1930 Ed., has been passed upon and interpreted by the Supreme Court of Puerto Rico and it has held that even though a law has a a retroactive effect, in no case may it prejudice rights vested under previous legislation and that laws do not have a retroactive effect unless therein expressly provided. (See Torres v. Winship, 56 DPR 693; Molina v. Rodriguez, 63 DPR 458; Aguilar v. Vazquez, 6 PRR 3; Sobrinos de Portilla v. Quinones, 10 PRR 185; Chaves v. Arroyo, 16 PRR 777; Lucero et al. v. Heirs of Vila, 17 PRR 141; Ex-parte Leroy 17 PRR 1008.

A very interesting case and similar to the case at bar is the case of Autoridad sobre Hogares de P. R. v. Corte de Distrito de Arecibo, Hon. R. Agrait Aldea, Juez, 1718, supra.

In this case, it appears that on October 17, 1944, the Housing Authority of P. R. filed suit in the District Court of Arecibo condemning property of one Carmelo J. Colon and others.

Acting upon a petition of the Authority, the District Court on October 20, 1944, decided that the title to the property which was the subject of the condemnation proceedings was vested in the Authority from October 18, 1944, that being the date of the filing of the declaration of taking and the date when there was deposited with the Clerk the sum of $14,825.25.

On May 20, 1947, the owner of the property filed a motion praying for a reversion of the title and possession of the property, alleging that the final order in the proceedings of expropriation was as of the 8th of November 1945 and under Sec. 7 of the Expropriation Act the party dispossessed of property may recover the same, returning the money paid, if the land is not put to the use for which it was condemned within a period of six months or within the dates set out by the franchise.

The District Court held on June 4, 1947, that Colon was entitled to the return of his property. The Authority then appealed to the Supreme Court of Puerto Rico.

The main point relied upon by the Authority in this case is that Sec. 7 of the Expropriation Act does not apply to the Housing Authority of Puerto Rico which is an agency and instrumentality of the Government.

The Supreme Court held that Section 7 of the Expropriation Act did apply to the Housing Authority, and said: "after a considered study of the laws cited it is our opinion, and we decide, that the Housing Authority of Puerto Rico, is a public corporation which upon making use of the power to expropriate private property, acts under the express concession or delegation of that power which has been granted by the Legislature; being therefore, and by express mandate of Section 7 of the law of its creation, subject to the provisions of Section 7 of the Expropriation Act."

In the course of the opinion, the Court in commenting upon Sec. 7, states:

"And we have seen that Sec. 7 of the Expropriation Act provides that the title and possession shall revert to the owner whenever the property is not put to the use for which it was condemned within the time designated in the franchise or within six months from the date of the final judgment of the condemnation."

"The jurisprudence cited by appellant to sustain its contention that the absolute dominion title to the property having passed to the Authority, the same does not

revert to the prior owners upon cessation of the use of the same for the purposes of the condemnation, does not apply to the case we are now considering. The reversion of the property is not claimed here, because of a cessation of the public use, but rather because the property has not been dedicated within the term prescribed by the law to the public use for which it was condemned."

"Our statute, the Expropriation Law, with which the plaintiff authority must comply by express mandate of Art. 12 of the law which gave it legal existence, is not silent with respect to the term within which the condemned property must be dedicated to the public use. If this term is binding, as it is in our judgment, on the Government of Puerto Rico, it necessarily must bind any authority, agency or governmental instrumentality or public service corporation exercising the power to condemn by delegation or concession from the Insular Government. We have no doubt whatsoever that that was the intention of the Legislature in providing, in Art. 12 above, that the Housing Authority 'may avail itself of condemnation proceedings in conformity with the provisions of the Act entitled "An act providing for expropriation of private property for the purposes and under the conditions expressed in the same." ' "

In this case, the Court held that the motion asking the reversion of the property was filed prematurely and that since a final judgment in condemnation had never been rendered, therefore, the 6 months period fixed by Sec. 7 of the Expropriation Act, for the reversion of title to the owner had not commenced to run.

In the last paragraph of this opinion, the Supreme Court again cites Sec. 7 wherein we find the following: "No final judgment having yet been entered, the term of six months fixed by Art. 7 of the Expropriation Law for the reversion of the title to the defendants has not commenced to run. The motion praying the reversion of the title and possession of the immovable was filed prematurely. The lower court erred in sustaining it."

Defendant argues strenuously in his brief that Sec. 386 of the Political Code of Puerto Rico applies only to criminal and tax matters, although the terms of the section are general. There may be some merit in this contention as the history and cases interpreting this section (U.S. Revised Stat. Sec. 13) are cases involving penal statutes and tax cases involving the Government. Such cases as Hertz v. Woodman and Ilustrado v. Buscaglia, supra. See also Title 1, Sec. 29, U.S.C.A. supra. However, the Court does not deem it necessary to decide the question whether Sec. 386 applies only to criminal and tax matters.

Defendant then argues that the penalty, forfeiture or liability mentioned in Sec. 386, supra, has to be a penalty or liability already accrued before the repeal of the Statute.

This brings us to the question of vested rights and counsel for defendant argues that Sec. 7 of the Expropriation Act of Puerto Rico was purely an act of grace which the Legislature could withdraw or repeal at will, as it did, on May 11, 1948. Defendant's summarized contention is that plaintiff did not acquire any vested right by virtue of Sec. 7, supra.

█ "Where a statute is repealed, a general saving statute operates to save any substantive right of a private nature, liability, right of action, penalty, forfeiture or offense which has accrued under the repealed statute."

1. Sutherland Stat. Const. Sec. 2047, p. 531, 532; United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480; Hertz v. Woodman, 218 U.S. 205, 30 S.Ct. 621, 54 LEd. 1001; United States v. Curtiss-Wright Exp. Co., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Wing v. McCallum, 1 Cir., 292 F. 810; Higgins Estate v. Hubbs, 31 Ariz. 252, 252 P. 515; Simborski v. Wheeler, 121 Conn. 195, 183 A. 688; Farmer v. People, 77 Ill. 322; Heath v. State, 173 Ind. 296, 90 N.E. 310, 21 Ann.Cas. 1056; Hochstetler v. Mosier Coal & Mining Co., 8 Ind.App. 442, 35 N.E. 927; Azeltine v. Lutterman, 218 Iowa 675, 254 N.W. 854; Commonwealth v. Louisville & N.R. Co., 186 Ky. 1, 215 S.W. 938; Denning v.

Yount, 62 Kan. 217, 61 P. 803, 50 L.R.A. 103; Commonwealth v. Sullivan, 150 Mass. 315, 23 N.E. 47; State v. Smith, 62 Minn. 540, 64 N.W. 1022; Bookwalter v. Conrad, 15 Mont. 464, 39 P. 573; State v. Crusins, 57 N.J.L. 279, 31 A. 235; McCann v. New York, 52 App.Div. 358, 65 N.Y.S. 308; People v. Scannell, 40 Misc. 297, 82 N.Y.S. 362; Public Service Commission v. Booth, Sup., 155 N.Y.S. 568; Cuthbert v. Smutz, 1939, 68 N.D. 575, 282 N.W. 494; Wallace v. Goodlett, 104 Tenn. 670, 58 S.W. 343; Thomas v. State, 1935, 218 Wis. 83, 259 N.W. 829.

"A right has vested when its enjoyment, present or prospective, has become the property of a particular person". Arnold & Murdock Co. v. Industrial Commission et al., 1924, 314 Ill. 251, 145 N.E. 342, 344, 40 A.L.R. 1470.

"A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference, and whether it springs from contract or from the principles of the common law, the legislature may not take it away." 11 Am.Jur., Sec. 377, p. 1206. Gibbes v. Zimmerman, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342; Graham v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Forbes Pioneer Boat Line v. Everglades Drainage Dist., 258 U. S. 338, 42 S.Ct. 325, 66 L.Ed. 647; Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 108, 27 L.Ed. 104; Baltimore & O. S. W. R. Co. v. Reed, 158 Ind. 25, 62 N.E. 488, 56 L. R.A. 468, 92 Am.St.Rep. 293; Ft. Worth v. Morrow, Tex.Civ.App., 284 S.W. 275; Merchants' Bank of Danville v. Ballou, 98 Va. 112, 32 S.E. 481, 44 L.R.A. 306, 81 Am. St.Rep. 715.

"A vested right * * * [is] one which is absolute, complete, and unconditional to the exercise of which no obstacle exists, and which is immediate and perfect in itself and not dependent upon a contingency". Hazzard v. Alexander, 6 W. W. Harr., Del., 212, 173 A. 517, 519, citing State v. Hackman, 272 Mo. 600, 199 S.W. 990.

In Kennedy Coal Corporation v. Buckhorn Coal Corporation, 140 Va. 37, 124 S.E. 482, 484, we find the following: "Now, what is a vested right? Without reference to a dictionary definition we would define it as a right, so fixed, that it is not dependent on any future act, contingency, or decision to make it more secure. * * * The right of appellees at the time of the rendition of the judgment of the court contained in the decree was not fixed in the sense that it was settled. It was an inchoate right * * *."

In Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104, suit was brought by plaintiff, a citizen of Louisiana, executrix of Richard Pritchard, deceased, against the defendant Norton, a citizen of New York, upon an appeal bond signed in New York, and which agreed to fully indemnify plaintiff against all loss or damage arising from his liability on said appeal. The bond was signed by one McComb and defendant Norton. Judgment was rendered on the appeal in Louisiana, in satisfaction of which plaintiff Pritchard became liable to pay and did pay.

Norton's defense was that the bond sued on was executed and delivered in New York and without any consideration and void under the laws of New York.

The District Court held for the defendant and the question was whether the laws of New York or Louisiana defined and fixed the rights and obligations of the parties.

The Supreme Court of the United States in this case reversed the Circuit Court and held for the plaintiffs setting out that the bond of indemnity sued on was entered into with a view to the law of Louisiana as the place of the fulfillment of its obligation, and that the question of its validity, as depending on the character and sufficiency of the consideration, should be determined by the law of Louisiana and not that of New York.

In the discussion of the contract and the rights of the parties, the Court, 106 U.S. on page 132, 1 S.Ct. on page 108, stated as follows: "The principle that what is apparently mere matter of remedy in some circumstances, in others, where it touches the substance of the controversy, becomes matter of right, is familiar in our constitutional jurisprudence in the application of that provision of the constitution of the United States which prohibits the passing by a

state of any law impairing the obligation of contracts; for it has been uniformly held that 'any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution.' McCracken v. Rayward, 2 How. [608,] 612, [11 L.Ed. 397]; Cooley, Const. Lim. 285."

The Court then in the following paragraph lays down this rule: "Hence it is that a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Whether it springs from contract or from the principles of the common law, it is not competent for the legislature to take it away. A vested right to an existing defense is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice. Cooley, Const.Lim. 362, 369."

Gibbes v. Zimmerman, 290 U.S. 326, 54 S.Ct. 140, 142, 78 L.Ed. 342 was an appeal from the Supreme Court of South Carolina granting a writ of prohibition to stay proceeding in equity for the appointment of a receiver for an insolvent bank.

Under the laws of South Carolina prior to March 9, 1933, 38 St. at Large, p. 1174, the remedy of depositors of an insolvent bank for the enforcement of the stockholders' statutory liability was through a receiver, whose duty it was to enforce this liability for the benefit of creditors and depositors. An Act of that date granted to the Governor plenary power over all state banks, and prohibited suits against them without the Governor's consent as long as remained in control. Under regulations promulgated pursuant to the Act, the Governor was authorized to appoint a conservator for any bank in order to conserve its assets for the benefit of depositors and creditors; conservators thus appointed were to have all the powers of receivers, and the rights of all parties were to be the same as though a receiver had been appointed. A later act empowered the Governor to order the liquidation of banks by conservators, when necessary to protect depositors and creditors; the powers and duties of conservators to this end being those of a receiver. The substantive rights under the old law were preserved.

The appellant denied the validity of the Act of March 9, 1933 asserting that his right to proceed for the collection of stockholders' liability was a vested property right and that the Act of March 9, 1933 arbitrarily deprived him of a remedy for the enforcement of stockholder's liability, which remedy was his property and was taken from him without due process.

The Court then said as follows: "But although a vested cause of action is property and is protected from arbitrary interference (Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104), the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure." (Citing cases.)

The Court held that the substantive rights existing under the old law were preserved and the legislation as applied to a depositor who sought the appointment of a receiver for an insolvent bank, of which a conservator was in possession, does not deprive him of property without due process of law under the Fourteenth Amendment.

Graham v. Goodcell, 282 U.S. 409, 51 S. Ct. 186, 75 L.Ed. 415, is a case construing sec. 607 and 611 of the Revenue Act of 1928 on the matter of "overpayment" of taxes, c. 852, 45 Stat. 791, 874, 875, 26 U.S.C.A.Int.Rev.Acts, pages 459, 461.

The contentions presented are, in substance, that sections 607 and 611 of the Revenue Act of 1928 do not apply retroactively; that their provisions are not applicable to payments made under duress; that the stay contemplated by Sec. 611 is not a mere voluntary delay in collecting the tax; that these sections were intended to control administrative action only and not to affect judicial proceedings; that Sec. 611 should not be construed to apply to a personal action against the Collector to recover taxes illegally collected; that sec. 611 was repealed by the Act of May 29, 1928, c. 901, sec. 3, 45 Stat. 986, 996; that sec. 250 (d) of the Revenue Act of 1921

extinguished the liability for taxes upon the expiration of the five-year period specified; that the Congress having extinguished the liability had no power under the Fifth Amendment of the Constitution to revive it; and that, if Sec. 611 is construed to authorize the collection of the tax in the circumstances shown, it further violates the Fifth Amendment because the statute is unreasonable and arbitrary.

The Court held and stated, 282 U.S. on pages 429 and 430, 51 S.Ct. on page 194 as follows: "It is apparent, as the result of the decisions, that a distinction is made between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice. Where the asserted vested right, not being linked to any substantial equity, arises from the mistake of officers purporting to administer the law in the name of the Government, the legislature is not prevented from curing the defect in administration simply because the effect may be to destroy causes of action which would otherwise exist. 'The power is necessary that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration.' Charlotte Harbor & Northern Railway Company v. Welles, supra [260 U.S. 8, 43 S.Ct. 3, 67 L.Ed. 100]. This principle covers the present case. The petitioners had been indebted to the Government for the amount which was subsequently collected. They had asked for a review of the assessment and collection was postponed. The Treasury Department had mistakenly assumed that the statute of limitations did not apply to distraint proceedings and before the mistake was discovered the period of limitation had expired. The Congress could correct this defect in administration without violating any substantial equity, and this was accomplished by section 611 of the Revenue Act of 1928."

Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647. In this case the plaintiff having been required by the defendant Board to pay charges for passage through a canal lock the use of which was then by law free, its right to recover the amount was protected by the Federal Constitution against destruction by the State, and could not be defeated by an act of the legislature purporting to validate the collection retroactively.

This suit was begun in 1917 to recover tolls unlawfully collected from the plaintiff, the plaintiff in error, for passage through the look of a canal. The Supreme Court of Florida sustained the declaration, 77 Fla. 742, 82 So. 346, but on the day of the decision the Legislature passed an act, c. 7865, Acts of 1919, F.S.A. c. 298 App. § 1532, that purported to validate the collection. The act was pleaded. The plaintiff demurred setting up Article I, Sec. 10, and the Fourteenth Amendment of the Constitution of the United States, but the Supreme Court rendered judgment for the defendant on the ground that the plea was good. 80 Fla. 252, 86 So. 199.

Mr. Justice Holmes who wrote the opinion in this case stated in that: "It is true that the doctrine of ratification has been carried somewhat beyond the point that we indicate, in regard to acts done in the name of the Government by those who assume to represent it. * * * It is true also that when rights are asserted on the ground of some slight technical defect or contrary to some strongly prevailing view of justice, Courts have allowed them to be defeated by subsequent legislation and have used various circumlocutions, some of which are collected in Danforth v. Groton Water Co., 178 Mass. 472, 477, 59 N.E. 1033, 86 Am. St.Rep. 495; Dunbar v. Boston & Providence R. Corp., 181 Mass. 383, 385, 63 N.E. 916. In those cases it is suggested that the meaning simply is that constitutional principles must leave some play to the joints of the machine."

The Court then adds. "But Courts can not go very far against the literal meaning and plain intent of a constitutional text. Defendant owed the plaintiff a definite sum of money that it had extorted from the plaintiff without right. It is hard to find any ground for saying that the promise of

the law that the public force shall be at the plaintiff's disposal is less absolute than it is when the claim is for goods sold. Yet no one would say that a claim for goods sold could be abolished without compensation. It would seem from the first decision of the Court below that the transaction was not one for which payment naturally could have been expected. To say that the Legislature simply was establishing the situation as both parties knew from the beginning it ought to be would be putting something of a gloss upon the facts. We must assume that the plaintiff went through the canal relying upon its legal rights and it is not to be deprived of them because the Legislature forgot."

In Sutherland Statutory Construction 1, 3d Ed. Sec. 2044, we find the following:

"Under common law principles of construction and interpretation the repeal of a statute or the abrogation of a common law principle operates to divest all the rights accruing under the repealed statute or the abrogated common law, and to halt all proceedings not concluded prior to the repeal. However, a right which has become vested is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence. Consequently, the repeal of the statute or the abrogation of the common law from which it originated does not efface a vested right, but it remains enforceable without regard to the repeal.

"In order to become vested, the right must be a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that the continued existence of the statute cannot further enhance its acquisition."

The question whether a retroactive statute repealing or amending a prior statute permitting the recovery of taxes illegally or erroneously assessed, collected, or paid is constitutional is ordinarily made to turn upon the question whether the right to recover such taxes is vested at the time of such repeal or amendment. Thus, in holding valid, as retroactively applied, a statute repealing a statute which had permitted one who had voluntarily but erroneously paid taxes to recover the same. The court held that the statute repealed created a special remedy, and that the taxpayer had no vested right which could not be abrogated by repeal of the statute, in the recovery of taxes voluntarily paid before final judgment on his application for a refund. The court said that in general, a legislature cannot pass a retrospective law impairing the obligation of contract or impairing a vested right, but that a right, to be within the protection of such rule, must be a vested right, and declared: "It must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another." People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N.E.2d 318, 124 A.L.R. 1480.

On the other hand, it was held in Duke Power Co. v. South Carolina Tax Commission, 4 Cir., 1936, 81 F.2d 513 (writ of certiorari denied in 1936, 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392), that if a state statute repealing a former remedy in the case of a dispute as to taxes due, by payment thereof under protest and suing for the recovery thereof, were given a retroactive effect so as to deprive one who had thus paid disputed taxes under protest of all right to sue therefor, it would be unconstitutional as a denial of due process and the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, since the taxpayer would thus be deprived of a vested right. Parker, J., speaking for the court, said [81 F.2d 517]: "As pointed out above, appellants have a vested right with respect to the moneys paid under the statute; and the state is forbidden by the due process and equal protection clauses of the Fourteenth Amendment to deprive them of that right. * * * The state can, of course, withdraw at any time its consent to be sued; and the right to withdraw same is not affected by the contract clause of the Constitution (article 1, § 10), or, ordinarily, by the limitations of the Fourteenth Amendment. * * * But the repealing statute here, if given the interpretation contended for by appellee, does more then withdraw the state's con-

sent to suit. It wipes out all rights of the appellents with respect to the moneys paid under protest; for no one would contend that, in the absence of the statute, a taxpayer would have any rights with respect to tax payments already made. As there is no separate provision of the repealing statute dealing with the remedy, the entire statute would necessarily be held invalid in so far as it applied to transactions occurring prior to its passage. * * * A statute which attempts by the same provision to destroy both a right and a remedy succeeds in destroying neither."

It is also said in Duke Power Co. v. South Carolina Tax Commission, supra, that if a statute repealing the remedy of paying taxes under protest and bringing suit for their recovery were to be given retrospective operation with respect to taxes already paid under protest, so that no remedy remained for the taxpayer to recover such taxes, "a grave constitutional question would be presented" which the court did not therein discuss further.

The Court, in Housing Authority v. District Court of Arecibo, 1718, supra, upon the question of the Expropriation Act of Puerto Rico, states as follows:

"Art. 282 of the Civil Code, 1930 ed. provides as follows: No person shall be deprived of his ownership, except it be by a competent authority and for a justified purpose of public utility, and after having been properly indemnified.

"Eminent Domain" is the right or power possessed by the State or nation or those to whom said power has been lawfully delegated to expropriate private property for dedication to a public use. It is a necessary and inherent attribute of sovereignty that exists independently of constitutional provisions and is superior to all property rights. It is a power that rests in the state but for its exercise it is necessary that there be legislative action specifying the occasions, the form and manner in which condemnation may be exercised and the agencies that may make use of this extraordinary power. The power to expropriate private property for dedication to a public use may be exercised by the Government directly or through the creation by the Legislature of a corporate entity, which will act through a delegation of said power. And it is unnecessary to state that if the state can only expropriate when the property is necessary for dedication to a public use, the corporation that acts by delegation from the state is subject to the same limitation.

"Nevertheless, the delegation of the power of eminent domain made by the Legislature in favor of plaintiff Authority is not of an absolute character but is subject to the restrictions and limitations which are set forth in precise and clear terms in Art. 12, supra. The Authority has the right to condemn all such immovables as it may consider necessary for the public purposes specified in the law but it must do so 'through condemnation proceedings' provided by the 'Act establishing condemnation proceedings' provided by the 'Act establishing condemnation of private property', and the purposes and under the conditions provided in the same, approved March 12, 1903.

"But we have already seen that that law provides in its Section 7 that the title and possession shall revert to the condemnee whenever the work is not completed within the term provided in the concession or within the period of six months 'following the date upon which judgment was entered ordering the condemnation.'"

Text writers on the matter of vested rights speak of "substantive rights of a private nature"; "right of action"; "enjoyment, present or prospective"; "it must become a title, legal or equitable to the present or future enjoyment of property"; "a right has become vested when its enjoyment, present or prospective, has become the property of a particular person"; "rights linked to a substantial equity"; "violating a substantial equity."

If the Court should interpret the repeal statute (Law 105, supra) as contended by the defendant it would wipe out all rights of the plaintiff to have his property returned to him, even though the property has not been put to the public use for which it was condemned and more than six months have elapsed from the date of the final judgment in condemnation and the amount received in the condemnation returned.

The defendant argues that the owner of property which has been condemned for

public utility, has only a mere expectation or an inchoate right, based upon an anticipated continuance of the existing statute, and that Sec. 7, Expropriation Act, applies only in penal and tax matters.

Even if we should say that Sec. 386, supra, applies only to penal and tax matters, the defendant still has another obstacle in his way. Sec. 3, Civil Code, Ed. 1930 contains provisions against retroactive laws "unless they expressly so decree". Thus Sec. 3, Civil Code, supra, as to any rights acquired under Sec. 7 of the Expropriation Act, is a saving statute, which operates as a saving clause. (see Torres v. Winship, supra.)

The statute (sec. 7, Expropriation Act), says that "whenever such work is not completed within the time fixed by the concession or franchise or, in case no time is so fixed within the term of six months, counting from the date on which the final decision ordering the condemnation was rendered, the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership, shall have a right of action to recover the property condemned, returning the amount received."

As the pleadings now stand, that is, the complaint and the motion to dismiss, the property in this case has not been put to the public use for which it was condemned and more than six months has expired from the date of the final judgment in condemnation. The question then arises whether under the circumstances of this case, the owner acquired not a contingent or inchoate right, but a vested right of action to recover his property six months after the date of the final judgment in condemnation.

An "inchoate right is that which is not yet completed or finished." Vol. 20, Words and Phrases, Perm.Ed. page 415.

Therefore, it may be said that a person dispossessed of his ownership by condemnation under Sec. 7, has an inchoate right or expectancy to have his property returned, for a period of six months from the date of the final judgment in condemnation. However, once the six months period has elapsed the owner's right to the return of his property is more than a mere expectancy. In other words, it is no longer an inchoate right but a vested right.

The six months period provided under Sec. 7 having expired, the owner's right of action to recover his property is complete and there is no other contingency that he has to meet except to return the amount received in the condemnation. This right of action is not dependent on any future act, contingency or decision to make it more secure. It accrued and vested at that time and a decision or final judgment is not necessary to make it more secure. In this case the owner did not voluntarily deed his right of ownership to the Housing Authority. The property was obtained by condemnation proceedings taken under the provisions of the Expropriation Laws of Puerto Rico.

The Expropriation Law sets out the conditions under which private property may be condemned for public use and establishes the owner's right to recover his property under certain conditions. It seems to the Court that the right of action given the condemnee under Sec. 7, supra, is more than a mere remedy. Sec. 7 is not a procedural or remedial statute. The right under Sec. 7 is a substantive right of a person whose property has been condemned to have it returned, in case it is not dedicated within the term prescribed by the statute, to the public use for which it was condemned.

Therefore, the motion to dismiss will be denied.